Anna HALECKI, Administratrix ad Prosequendum of the Estate of Walter Joseph Halecki, deceased, and Anna Halecki, Administratrix of the Estate of Walter Joseph Halecki, deceased, Plaintiff-Appellant,

v.

UNITED NEW YORK AND NEW JERSEY SANDY HOOK PILOTS ASSOCIATION, a corporation, Defendant-Appellee.

No. 329, Docket 26069.

United States Court of Appeals Second Circuit.

Argued May 11, 1960.

Decided July 22, 1960.

Bernard Chazen, Hoboken, N. J. (Nathan Baker and Milton Garber, Hoboken, N. J., on the brief), for plaintiff-appellant.

Lawrence J. Mahoney, New York City (Dougherty, Ryan & Mahoney and Thomas J. Short, New York City, on the brief), for defendant-appellee.

Before CLARK, MOORE and FRIENDLY, Circuit Judges.

MOORE, Circuit Judge.

This case now comes before us on appeal for the second time. The first trial resulted in a jury verdict for the plaintiff. The complaint was based upon two counts, negligence and unseaworthiness. Upon appeal the judgment was affirmed, Chief Judge Lumbard dissenting as to unseaworthiness and contributory negligence (251 F.2d 708). Certiorari was granted by the Supreme Court (357 U.S. 903, 78 S.Ct. 1149, 2 L.Ed.2d 1154). That Court vacated and remanded upon the ground that the decedent was not performing the type of work which en-

titled him to a warranty of seaworthiness (358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541). Upon the second trial (restricted to negligence), the jury returned a verdict for the defendant. Appellant claims that the jury's determination was the result of an erroneous statement of the law by the trial court in its charge and a failure to inform the jury of applicable principles set forth in the opinions of this court and the Supreme Court on the previous appeals.

Plaintiff on the retrial attempted to fortify her position to the effect that the work done by the deceased was traditionally performed by seamen. The trial court, however, ruled that the essential facts were the same as on the first trial and, relying on the Supreme Court's rejection of the warranty of seaworthiness contention, refused to send this question to the jury. With this decision we agree. The case was thus submitted solely on the negligence count.

Although an end of litigation is desirable, our system demands its continuance until the courts are satisfied that the issues have been resolved by the jury upon a correct exposition of the law. Our task, therefore, is to compare the trial court's charge upon which the jury is presumed to have relied during its deliberations with the applicable law.

Repetition of the facts, set forth with clarity in 251 F.2d 708 and 358 U.S. 613, 79 S.Ct. 517, is not required beyond the reminder that the defendant owner of the "New Jersey" entrusted its ship for annual overhaul to Rodermond Industries. One of the specified items was a cleaning of the generators by spraying them with carbon tetrachloride, the fumes of which unless carefully controlled can be deadly. Rodermond, not equipped to do this work, subcontracted it to K & S Electric Company of which the decedent was an employee. The generators were located in the engine room, one deck below the main deck. Because of the danger the work was assigned to a Saturday when the crew was absent. The equipment was brought on board by the decedent and another K & S electrician. It consisted primarily of gas masks, air hoses for spray and exhaust and a high compression blower. In addition, the ship had its own ventilating system in operation by which air was drawn in by fans and vents at the top of the engine room. The spraying was exclusively within the control of the two K & S electricians. No officer or crew member from the ship was present except a single watchman on deck. Despite the precautions taken, the decedent within two weeks died of carbon tetrachloride poisoning. There was testimony that the ventilating means provided were adequate to carry off only a fraction of the deadly fumes.

The questions arise: was the ship owner negligent and what criteria are to be considered in making this determination? This court on the first appeal said, "As to the claim based on negligence, * * * the shipowner was liable, not only for the negligence of the master[2] but, although the work was let out to a subcontractor, also for any lack of 'reasonable care to ascertain the methods and manner in which the concessionaire or independent contractor carries on his activities, not only at the time when the concession is let, or the contractor employed, but also during the entire period in which the concessionaire or contractor carries on his activities.'[3] Being charged with knowledge that so dangerous a substance as tetrachloride might be used, it was proper to leave to the jury whether the 'methods and manner' of its use were proper" (251 F.2d 708, 711).

Upon appeal, the Supreme Court found that decedent's work was that "of a specialist, requiring special skill and special equipment—portable blowers, air hoses, gas masks, and tanks of carbon tetrachloride, all brought aboard the vessel for this special purpose, and none con-

---

2. Leathers v. Blessing, 105 U.S. 626, 630, 26 L.Ed. 1192.

3. Restatement of Torts, Vol. II, § 344, Comment b.

nected with a ship's seagoing operations" (358 U.S. 613, 617, 79 S.Ct. 517, 519). Despite the complete independence of the spraying operation from normal activities of a ship's crew and the assumption of control by an independent specialist with respect to method and equipment, both this court and the Supreme Court agreed that as to the claim based on negligence there was an issue which could be decided only by a verdict. The Supreme Court furnished a more specific guide in saying, "The defendants owed a duty of exercising reasonable care for the safety of the decedent. They were charged with knowledge that carbon tetrachloride was to be used in the confined spaces of the engine room. It was for the triers of fact to determine whether the defendants were responsibly negligent in permitting or authorizing the method and manner of its use" (358 U.S. 613, 618–619, 79 S.Ct. 517, 520).

■ ■ At the end of the second trial the court was requested by the plaintiff to charge the jury in these very words but the court refused, saying in part, "I don't believe that that is the fundamental issue in the case, in the factual situation which has developed at this trial. The question is who was in control of this work that was being done?" A trial judge is, of course, not required to deliver his instructions as to the law either in the specific words requested by the parties or in the exact language of any opinion. However, the substance of the applicable law must be stated so that the facts may be applied thereto. Examining the charge to this end, we find that the jury was told that the decedent "was entitled to a reasonably safe place to work"; that "The extent of a ship owner's duty is largely determined by the facts and circumstances, including the nature of the work to be done, the degree of control relinquished by the owner to a responsible contractor, and knowledge or the reasonable possibility of acquiring knowledge of an unsafe condition"; that "If the owner had the power to control the manner of performing the work in which the carelessness occurred, then the owner might be liable"; that a general ability to control "does not make the owner liable for the negligence of a subcontractor"; and that "Where a ship owner surrenders control of part of the ship to an independent contractor, the duty with respect to the surrendered part then becomes the duty of the subcontractor. The owner would not be responsible for an unsafe condition thereafter created by the subcontractor."

The factual issue centered around the adequacy of the ventilation in the engine room to carry off the fumes. The court advised the jury that "there was no proof that the officers of the ship or the officers of the defendant corporation had anything to do with placing the ventilating equipment on the ship" and "If the officers of the ship, or of the defendant, had supervised this work, then there might have been a duty upon them. However, the evidence is undisputed that they did not supervise this work." The logical conclusion from this factual status necessarily called for a finding of no duty upon the defendant. In addition, the jury was told (as was the fact) that "There is no dispute that this additional ventilating system was not the equipment of the ship but the equipment of either K & S Electric Company or Rodermond Industries."

Although absence of control and its effect upon legal duties had predominated, the real issue of liability is to be found in two succinct statements in the charge, namely (1) "If you find that plaintiff has established by a fair preponderance of the evidence that the ship had control and custody of the engine room during the period of the installation of the ventilating equipment, then if that equipment was not sufficient and they knew that carbon tetrachloride was to be used, you might find that the ship owner was responsible * * *" and (2) "If, on the other hand, the ship owner did not have control of the engine room at the time, but had relinquished control to the subcontractor, and if the

ship owner did not assume the responsibility of providing the ventilating equipment or for the installation of the ventilating equipment, then you might find that it was not the responsibility or neglect of the ship owner which caused the accident."

But does this charge satisfy the law as enunciated by the Supreme Court? That Court stressed the function of the triers of fact, namely, "to determine whether the defendants were responsibly negligent in permitting or authorizing the method or manner of its [tetrachloride] use." The Court said that the defendant was charged with knowledge of its intended use. Moreover, the specifications themselves required its use.

■ Mere authorization, however, was not enough under the Supreme Court's direction. It was the "method or manner of its use." Immediately comes to mind the problem suggested by Chief Judge Lumbard in his dissent: How could the defendant, so lacking in skill and equipment to perform the spray cleaning operation that it had to entrust the work to outside experts, be expected to control or direct the "method or manner"? Had it attempted to do so, in view of its own lack of proper qualifications, this interference alone might well have been considered negligence. Appellant offers a quick answer in its suggested charge that "The defendant ship owner's absolute and non-delegable duty to supply a vessel and appliances adequate and sufficient for the work to be performed imposes liability on the defendant for such conditions regardless of any absence of control by the defendant over the vessel or appliances, and regardless of whether or not the defendant had notice of the inadequacy of the appliances." Any such principle of law would produce the anomalous result of imposing absolute liability upon a ship owner in a negligence action despite the fact that the ship owner was required to retain others to do the work because of its own incompetence in this specialized operation. The Supreme Court has suggested an area of possible liability but it does not include the principle contained in appellant's requested charge.

Nevertheless there is an area of facts for jury determination and application. Some responsibility must be assumed for the type of independent contractor retained. Where a dangerous operation is to be undertaken the law suggests that reasonable care be exercised to ascertain how the work is to be carried on (251 F.2d 708, 711). This does not mean that the ship owner must undertake the direction of the actual operation. The jury might find that the owner had done everything possible to assure safety. On the other hand, the owner knew the capacity of its regular engine room ventilating equipment and its adequacies or inadequacies to carry off heavy and dangerous fumes. A jury could find that assurance by the subcontractor that its own additional portable ventilators and gas masks were sufficient to prevent injury was reasonable care or it might equally conclude that the owner should have checked the equipment brought on board at least as to capacity and location for ventilating purposes.

Appellant urges that the trial court's charge so stressed the importance of control of the work and the fact that the defendant did not supervise it that it was tantamount to the direction of a defendant's verdict. This aspect of the charge was stressed, says appellant, when further instructions were sought by the jury on the subject of control by the court stating, "where a ship owner controlled the work, it may be held liable" but that the duty to the decedent "did not extend to conditions and activities over which the ship owner had no control."

There is merit in appellant's contention. The determinative propositions (previously set forth in full) put to the jury were (1) if the ship "had control and custody" and certain other facts were found, the owner might be held responsible; (2) conversely, if the owner had relinquished control to a subcon-

tractor, then the jury "might find that it was not the responsibility or neglect of the ship which caused the accident." A careful study of the charge leaves a definite impression that the jury was told that liability was dependent almost entirely upon control. Under a less restrictive charge the same jury might well have found that the ship owner had fulfilled its "duty of exercising reasonable care for the safety of the decedent," but the plaintiff was entitled to have the jury reach its conclusion upon an instruction that emphasized the defendant's awareness of the dangerous substance to be employed and of the capacity of the ventilating equipment in the engine room so that it could determine "whether the defendants were responsibly negligent in permitting or authorizing the method or manner of its use" (358 U.S. 613, 618–619, 79 S.Ct. 517, 520).

The result here reached is not inconsistent with such decisions as West v. United States, 1959, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161; Lyons v. Empressa Hondurena De Vapores, S. A., 2 Cir., 1959, 273 F.2d 317; Filipek v. Moore-McCormack Lines, 2 Cir., 1958, 258 F.2d 734; Gallagher v. United States Lines Co., 2 Cir., 1953, 206 F.2d 177; and Byars v. Moore-McCormack Lines, 2 Cir., 1946, 155 F.2d 587. In West, as here, the seaworthiness issue was eliminated, leaving only a claim of liability "for negligence in not maintaining a safe place for him [a shore-based employee of the contractor to whom the vessel had been turned over under a contract for repairs] to work, a duty asserted to be non-delegable and absolute" (361 U.S. at page 120, 80 S.Ct. at page 191). The Supreme Court, as to negligence, apart from the doctrine of seaworthiness, announced that its "decisions establish no basis of liability apart from fault" (361 U.S. at page 123, 80 S.Ct. at page 193).

Control, or particularly lack thereof, is obviously an element to be weighed in arriving at a conclusion as to the fulfillment of any duty of reasonable care. Thus, it would be "manifestly unfair to apply the requirement of a safe place to work to the shipowner when he has no control over the ship or the repairs, and the work of repair in effect creates the danger which makes the place unsafe" (361 U.S. at page 123, 80 S.Ct. at page 193). And were this the sole issue presented by the facts the principles of the West case would be applicable here. However, as in practically all these cases, slight factual differences call for slightly different treatment. Referring to its own decision in this case (United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki, 1959, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541), the Court in West pointed out the distinguishing element here, namely, "In that case the shipowner directed the use of carbon tetrachloride in the confined spaces of the engine room" (361 U.S. at page 124, 80 S.Ct. at page 193). Its remand on the negligence question required a determination of whether the direction to an independent contractor to use carbon tetrachloride and reliance upon him to arrange for adequate ventilation were or were not negligence on the part of the shipowner.

Both Filipek and Byars are within the doctrine that where the independent contractor is hired to perform work to repair a known dangerous condition or which creates the danger, the shipowner is not under a duty to furnish a safe place to work. In Gallagher all control of the unloading of cargo had been turned over to the stevedore. The decision in Lyons was based upon the jury's finding that the shipowner was not negligent and did not have control of the area in which the accident occurred.

Upon any new trial the complaint in an action instituted by plaintiff against Rodermond Industries in the State court in New Jersey should not be brought to the attention of the jury.

Reversed and remanded.