Barbara Ellen **EUTSLER**, individually and
as Guardian ad litem of Brian Charles
Eutsler, a minor, Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 8854.

United States Court of Appeals
Tenth Circuit.

April 12, 1967.

Richard L. Dewsnup, Salt Lake City, Utah (Paul N. Cotro-Manes, Salt Lake City, Utah, on the brief), for appellants.

Martin Jacobs, Washington, D. C. (J. William Doolittle, Acting Asst. Atty. Gen., William T. Thurman, U. S. Atty. and Alan S. Rosenthal, Atty. Dept. of Justice, on the brief), for appellee.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

DAVID T. LEWIS, Circuit Judge.

This suit was instituted by appellants under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), seeking damages for the death of Charles H. Eutsler in an explosion which occurred in October 1962 on the premises of Hercules Powder Company at Bacchus, Utah. At the time of his death, decedent was employed by Hercules and engaged in the performance of research and development work on a solid fuel rocket propellant pursuant to a contract between Hercules and the United States Air Force. The stipulated facts showed that decedent had just entered or was about to enter a building containing highly unstable casting solvent used in the manufacture of solid fuels when the explosion occurred. Inside the building were two other Hercules employees engaged in sampling the solvent and cleaning up both the sampling apparatus and the building proper. These two employees, as well as Eutsler, were killed instantly by the explosion. The case at bar is premised on the theory, stated by appellants, that "there

is a direct common law duty [owed to employees of an independent contractor] on the part of the United States, or any other contractee, when it directs an independent contractor to deal with inherently dangerous substances, to provide adequate safety regulations or to see that adequate safety regulations are followed by the independent contractor." According to appellants, the United States negligently breached this duty and as a direct and proximate result the explosion occurred killing Eutsler. On the authority of our decision in United States v. Page, 10 Cir., 350 F.2d 28, cert. denied 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470, the United States District Court for the District of Utah granted a motion for summary judgement in favor of the government.[1] Because of the procedural posture of the case, we assume that there was, or could have been, proof of causation and damages and address ourselves only to the issue of whether the United States owed to the employees of Hercules the duty ascribed to it by appellants.

We think the District Court properly concluded that the question of the government's duty to employees of its independent contractors is controlled by our holding in United States v. Page, supra, and we affirm the entry of summary judgment. With the exception that two separate accidents were involved, the facts in the case at bar and those in Page are virtually indistinguishable. In each case, three Hercules employees died in an explosion while performing work at Bacchus, Utah related to the development of a solid fuel rocket propellant. And in each case, the work was being performed pursuant to the same contract between Hercules and the United States Air Force, among the provisions of which was a requirement that Hercules comply with certain specific safety regulations and with "any additional safety measures required by the Contracting Officer." The contract also reserved to the government the right to inspect the plant and the work being performed by the contractor. The trial court in Page held that because of these contract requirements the government and its employees had assumed a duty to prescribe and impose such additional safety regulations as were necessary to minimize the danger to Hercules and its employees of handling and processing the intrinsically dangerous substances used in the performance of the contract. We reversed, holding that in spite of the specific contract regulations and the imposition of some government supervision no duty was violated by a failure to prescribe safety requirements in addition to those already set out in the contract.

Appellants urge that Page must be distinguished from the present case on grounds that the theories of liability are different. Page, it is said, turned upon considerations of a non-delegable duty and imputed negligence arising out of contract, while here the premise of simple negligence based upon the duty to exercise reasonable care is advanced. The foundation for this latter theory is section 413 of the Restatement of Torts which provides:

"One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

Although this court made no direct reference to section 413 of the Restatement in its consideration of the issues in

---

1. Summary judgment was similarly granted in another suit brought by a survivor of one of the other employees killed in the same explosion. The plaintiff in that suit has not appealed.

*Page*,[2] we think it clear that both the reasoning and disposition of that case negatives appellants' contentions here and that section 413 would be persuasive to appellants' arguments only if the phrase "to others" as contained therein pertained to employees of the independent contractor. One court, against quite different factual circumstances, lends comfort to appellants. Woolen v. Aerojet General Corp., 57 Cal.2d 407, 20 Cal. Rptr. 12, 369 P.2d 708. But the generally accepted rule is clearly to the contrary. E. g., Corban v. Skelly Oil Co., 5 Cir., 256 F.2d 775; Richardson v. United States, W.D.Tenn., 251 F.Supp. 107; Epperly v. City of Seattle, 65 Wash. 2d 777, 399 P.2d 591; Welker v. Kennecott Copper Co., 1 Ariz.App. 395, 403 P.2d 330; and authorities cited. Perhaps the most widely accepted reasoning behind the general rule is found in the special note to Chapter 15 of the Restatement of Torts (Second) [3] found at pages 17–18 of the American Law Institute's Tentative Draft No. 7. This states in pertinent part:

> "[T]he workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While the workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's

compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him."

The special note to Chapter 15 was not included in the final publication of the Restatement Second. The above-quoted portion has nevertheless become persuasive authority in that, prior to final publication, it was cited with approval by several courts. E. g., Richardson v. United States, supra; Welker v. Kennecott Copper Co., supra.

The reasons for the general rule become even more compelling in situations such as the one before us where the area of danger has virtually no bounds and it is speculative that, no matter what precautions are taken, experimental work of such a complex and sensitive nature could be performed without inherent danger to the employees involved. The United States neither expressly nor impliedly contracted to control the work of Hercules employees and we must, therefore, also reject the theory, implicit in appellants' argument,[4] that a contractee, having undertaken to impose certain safety precautions in some areas, is in violation of a legal duty by not imposing similar precautions in all areas. As we observed in *Page*,

> "Hercules had the primary responsibility for the safety of its employees; it had the direct control and supervision over them, and they were working in its plant. Further, it had the duty to perform and supervise the individual functions, the total of which produced the end product. The function the decedent was performing was

2. The one significant reference in *Page* to the Restatement of Torts was to section 427 which admittedly deals only with the concept of imputed negligence.

3. Chapter 15 of the Restatement of Torts (Second) is entitled "Liability of an Employer of an Independent Contractor" and covers sections 410 through 429.

4. In their appellate brief, appellants for the first time make statements that the government regulations "require em-

ployees of Hercules to follow a 'safety path' which leads them to their deaths * * *" and thus apparently also argue that the governmental safety regulations were themselves inherently dangerous. The pleadings and entire presentation to the trial court were directed to the claim of governmental negligence in nonfeasance in failing to prescribe *additional* safety regulations. We, of course, do not review the merits of arguments not applicable to the appellate record.

but one of many of these in this chain of production. It and the safety of those then working was under the exclusive control and supervision of Hercules. The safety program of the Government did not constitute an exercise of any such control. The fact that the activity may be dangerous has no consequences on this issue. See Wallach v. United States, 291 F.2d 69 (2d Cir.). See also Buchanan v. United States, 305 F.2d 738 (8th Cir.); Nyquist v. United States, 226 F.Supp. 884 (D.Mont.)." 350 F.2d at 31.

Affirmed.