502 F.2d 495
 164 U.S.App.D.C. 35
 Roscoe LINDLER and Tommy L. Davis
v.
DISTRICT OF COLUMBIA, Appellant.
Roger Lee JOHNSON
v.
DISTRICT OF COLUMBIA, Appellant, Interpace International
Pipe & Ceramics Corporation.
Doris HEMSLEY, Administratrix of the Estate of Peter Hemsley, Deceased
v.
DISTRICT OF COLUMBIA, Appellant, Interpace International
Pipe & Ceramics Corporation.
 Nos. 73-1725 to 73-1727.
 United States Court of Appeals, District of Columbia Circuit.
 Argued April 19, 1974.
Decided Aug. 23, 1974.
 
 David P. Sutton, Asst. Corp. Counsel, Washington, D.C., for the District of Columbia, with whom C. Francis Murphy, Corp. Counsel and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellants.
 James A. Mannino and Gerald Herz, Washington, D.C. with whom Floyd W. Anderson, Washington, D.C., was on the brief, for appellees.
 Before McGOWAN, EDWARDS* and TAMM, Circuit Judges.
 TAMM, Circuit Judge:
 
 
 1
 These consolidated cases concern appeals by the District of Columbia (hereinafter 'the District') from jury verdicts and judgments entered against it in district court. Although the District asserts several points of error, we are not persuaded, and therefore, affirm the judgment.
 
 
 2
 The essential facts of the case are uncontroverted. In February, 1970 the District contracted with C.F. and B., Inc. and State Construction Corporation, a joint venture (hereinafter 'the contractor'), for construction of the Southeast Relief Watermain, a 66 inch diameter watermain at N Street, Northwest, between First and Sixth Streets. The contractor chose to install the watermain in two sections: the first, approximately 800 feet, to begin at First Street and proceed in a westerly direction to New Jersey Avenue; the second to begin at Sixth Street and proceed easterly to meet the first. On or about June 24, 1970 the first section was completed and closed off with a metal 'cap' at the First Street end and with plastic, wood and dirt at the New Jersey Avenue end. This section was not opened again until August 4, 1970, 41 days later, when the metal 'cap' was completely removed and the plastic, wood and dirt partially removed to permit workmen to enter the pipe to clean the interior. Five of the contractor's employees entered the pipe with rags and a single bucket of water for cleaning. Their work progressed unimpeded until approximately 2:30 p.m. when flames erupted at the rim of the open end of the pipe and swiftly engulfed their caecal environment. Three of the workmen, who suffered severe burns, and the administratrix of the estate of a fourth workman, who died as a result of his injuries, brought this negligence action in district court against the District.
 
 
 3
 At trial, Mr. Charles Green, Director of Industrial Safety for the District's Minimum Wage and Industrial Safety Board, testified as an expert witness for plaintiffs-appellees that when a pipe has been sealed for an extended period and subsequently opened to permit workmen to enter it, the pipe should first be ventilated pursuant to section 11-21134 of the District of Columbia Safety Standards, Rules and Regulations-- Construction.[1] Mr. Green also testified that this regulation governing the ventilation of 'excavations' applied with equal force to watermain as well as sewer installation. He identified certain hazards that would necessitate ventilating the pipe; to wit, the possible presence of various dangerous gasses, e.g., methane, nitrogen dioxide oxide and carbon monoxide, and/or flammable vapors emanating from material or substances being used in the course of the work. J.A. at 130-33.
 
 
 4
 Evidence was also presented at trial which established that the District employed a full-time, on-the-job 'inspector' who was charged with the responsibility 'for pointing out to the contractor all instances of faulty workmanship, substandard materials, unsafe practices, or questionable interpretation of plans and specifications.' J.A. at 222-23. Moreover, if the contractor did not take corrective action, the inspector was 'authorized to stop work on the project, and notify (his) supervisor of (the) situation.' Id.
 
 
 5
 Although there was conflicting testimony concerning the requirement of ventilating the watermain and the possible presence of dangerous gas,[2] the trial court denied both of the District's motions for a directed verdict and sent the case to the jury with carefully drawn special interrogatories which delineated two possible theories of recovery: 1) inherently dangerous activity, and 2) activity necessitating special precautions.[3] Answering all of the special interrogatories affirmatively, the jury found the District liable, and judgment was entered accordingly.
 
 
 6
 On appeal, the District asserts three grounds of error: first, that the trial court erroneously held that the District's liability extends to employees of its contractor; second, that watermain installation is not inherently dangerous work requiring the taking of special precautions, and thus, the trial court erroneously permitted the jury to consider the District's liability for the contractor's negligence; and third, that the evidence failed to establish a negligently caused fire for which the District is responsible. As to the latter two assertions, we think both issues were properly treated as questions of fact upon which there was sufficient evidence of record to necessitate their submission to the jury for resolution. We turn now to the remaining issue, one of first impression in this jurisdiction, of whether the District, as a matter of law, may be held liable to employees of its contractor.[4]
 
 
 7
 We are urged by the District to adopt the view that one who engages an independent contractor is not liable to the employees of such contractor, inherently dangerous though the work may be. Appellees, of course, maintain that the law is to the contrary. The District supports its position with citation to a plethora of judicial authority, much of which we have found to be inapposite, which has held, on various theories founded in considerations of workmen's compensation, that the contractee's liability does not extend to employees of the contractor. While we have thoroughly considered the District's arguments, we think that the better reasoned view is that employees of the contractor are within the class of persons to whom the contractee, under certain circumstances, may be liable.
 
 
 8
 Where one contracts for the performance of inherently dangerous work, courts have recognized an exception to the general rule that the contractee is not liable for negligence of its independent contractor. This exception is premised upon the rationale that, because of the inherently dangerous nature of the work, the contractee is obligated to contemplate and guard against such dangers and thus, should not be allowed to 'escape' liability to persons or property negligently damaged in the performance of such work by its contractor. Although unequivocally applicable to third persons who are not employees of a contractor, the exception has become the subject of debate and diverse judicial interpretation when applied to employees of a contractor.
 
 
 9
 The essence of the controversy stems from a pragmatic concern regarding the contractee's relationship to the contractor's employees via workmen's compensation. The problem was most succinctly addressed in the Restatement (Second) of Torts, Special Note to Chapter 15 (Tent. Draft No. 7, 1962) (hereinafter 'the Tenative Draft'):
 
 
 10
 The workmen's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workmen's own employer, and of course premiums are to be calculated on that basis. While workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him.
 
 
 11
 Id. at 17-18. Several courts have substantially relied upon this language in holding that employees of a contractor are not among those to whom a contractee is liable. See, e.g., Welker v. Kennecott Copper Company, 1 Ariz.App. 395, 403 P.2d 330, 337-338 (1965); Richardson v. United States, 251 F.Supp. 107, 112-113 (W.D.Tenn.1966); Eutsler v. United States, 376 F.2d 634, 636 (10th Cit. 1967). However, we think it significant that the language was not included in the final draft of the Restatement (Second) of Torts and do not feel constrained to follow it, a course which several other courts have also taken. See, e.g., Woolen v. Aerojet General Corporation, 57 Cal.2d 407, 20 Cal.Rptr. 12, 369 P.2d 708 (1962) (en banc); Giarratano v. Weitz Company, 259 Iowa 1292, 147 N.W.2d 824 (1967); Hagberg v. City of Sioux Falls, 281 F.Supp. 460 (D.S.D.1968); see also Associated Engineers, Inc. v. Job, 370 F.2d 633 (8th Cir.), cert. denied, 389 U.S. 823, 88 S.Ct. 59, 19 L.Ed.2d 77 (1967). The proposition advanced in the Tentative Draft that a contractee is not liable to employees of a contractor because the contractee, in effect, ultimately bears the costs of workmen's compensation insurance misses the point. The question is not who may ultimately bear the costs, but rather who does the law require to bear the costs. The quid pro quo of contribution to workmen's compensation, at least in the District of Columbia, is not a correct rationale for non-liability where that quid pro quo is not required by law. Thomas v. George Hyman Construction Co., 173 F.Supp. 381 (D.D.C.1959). Consequently, we do not choose to follow the decisions of those courts that have adopted the reasoning of the Tentative Draft. Instead, we hold that, as a matter of law, the District may be held liable to its contractor's employees who are injured in the performance of inherently dangerous work.
 
 
 12
 Our conclusion that, under the circumstances of the instant case, workmen's compensation does not bar suit against the District by employees of its contractor is buttressed by reference to the District's own workmen's compensation statute, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. 901 et seq. (1970) (hereinafter 'the Act'), as made applicable to the District of Columbia by 36 D.C.Code 501 (1973). In Potomac Electric Power Company v. Wynn, 120 U.S.App.D.C. 13, 343 F.2d 295 (1965), this court had occasion to consider the construction the Act should be given. Initially, the court noted that the Act 'must be construed liberally in favor of the injured employee.' Id. at 296 citing Voris v. Eikel, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5 (1953), and Vinson v. Einbinder, 113 U.S.App.D.C. 246, 307 F.2d 387 (1962), cert. denied, 372 U.S. 934, 83 S.Ct. 880, 9 L.Ed.2d 765 (1963). Furthermore, 'narrow statutory construction should not deprive the injured employee of either his compensation or his claim in damages against third parties.' Potomac Electric Power Company v. Wynn, supra, 343 F.2d at 296. Referring specifically to third party suits pursuant to the Act's 1959 amendment,[5] the court stated that 'the statute is not designed to protect third parties from suit.' Id. at 298. Although the fact situation of the instant case is distinguishable from that in Potomac Electric, the construction given the Act in Potomac Electric is relevant to and supportive of our decision today which, indeed, comports with both the substance and spirit of the Act.
 
 
 13
 To summarize, where, as here, the District contracts for the performance of inherently dangerous work, the District has a duty to guard against injuries to third persons which may result therefrom; that duty is not delegable and is applicable with equal force to third persons generally and employees of the District's contractor alike.
 
 
 14
 Affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. 291(a)
 
 
 [1]
 Joint Appendix at 127-29 (hereinafter J.A.). Section 11-21134 of the District of Columbia Safety Standards, Rules and Regulations-- Construction, as read into the record at trial by Mr. Green, states:
 Before an employee is required or permitted to enter an excavation where natural ventilation may not be sufficient to eliminate the hazard of foul air or injurious gases, an approved type ventilating device of sufficient capacity to assure a safe and healthy atmosphere shall be provided.
 J.A. at 129.
 
 
 [2]
 See testimony of Mr. James Robertson, Jr., Director of the Engineering and Construction Administration of the District of Columbia Department of Environmental Services regarding application of contractual ventilation requirements to sewer construction only, J.A. at 187-88, 194-95, and the unlikelihood of dangerous gas being present. J.A. at 198
 
 
 [3]
 The special interrogatories read as follows:
 (1) Was the work being performed at the job site of such character as to be inherently or intrinsically dangerous?
 YES NO (1)(a) If your answer to (1) is 'yes,' then did the District of Columbia know or have reason to know that certain dangers were inherent in or normal to the work being performed?
 YES NO (1)(b) If your answer to (1)(a) is 'yes,' then did the company employing the plaintiffs fail to take reasonable care to guard against the inherent or intrinsic dangers?
 YES NO (2) Was the work being performed at the job site such that in the ordinary course of events it might occasion risk of injury to others unless special precautions were taken?
 YES NO (2)(a) If your answer to (2) is 'yes,' then did the District of Columbia know or have reason to know of the risk of injury to others from the work being performed at the job site in the absence of special precautions?
 YES NO (2)(b) If your answer to (2)(a) is 'yes,' then did the District of Columbia fail to exercise reasonable care to see that such special precautions were taken?
 YES NO
 J.A. at 41-42.
 
 
 [4]
 Although our decision is dispositive of the issue as to the instant case, the District of Columbia Court of Appeals ultimately will be the final arbiter since the issue concerns a matter of local law of the District of Columbia. M.A.P. v. Ryan, 285 A.2d 310 (D.C.App.1971)
 
 
 [5]
 33 U.S.C. 933 (1970)