Phillip HESS, Plaintiff-Appellant,

v.

UPPER MISSISSIPPI TOWING CORP.
and Penlatex Barge Lines, Inc.,
Defendants-Appellees,

Fidelity & Casualty Co. of New
York, Intervenor.

No. 75–4353.

United States Court of Appeals,
Fifth Circuit.

Sept. 23, 1977.

Rehearing and Rehearing En Banc
Denied Oct. 25, 1977.

Charles R. Moore, Baton Rouge, La., for plaintiff-appellant.

James A. George, Baton Rouge, La., for defendants-appellees.

David W. Robinson, Baton Rouge, La., for intervenor.

Before GEWIN, RONEY and HILL, Circuit Judges.

RONEY, Circuit Judge:

The plaintiff worked for an independent contractor employed by defendants to "free" a barge of gasoline. An explosion burned him severely, and he sued the defendants, alleging failure to provide a safe place to work, negligent employment of an independent contractor, strict liability, and negligent maintenance of dangerous premises. At the close of plaintiff's evidence, the district court directed a verdict against him. On appeal, he alleges the district court misapplied the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S. C.A. § 905(b) (Supp.1977), to foreclose his case. Because the Longshoremen's Act's compensation provisions afford the exclusive remedy for his injuries, we affirm.

The accident took place in 1973. Plaintiff's employer, Port Allen Marine, operated a facility on the Mississippi River for cleaning barges used to transport petroleum products. Pentalex Barge Lines, Inc. delivered to Port Allen Marine a barge owned by Upper Mississippi Towing Corp. The barge had recently carried a cargo of high-grade gasoline, but was empty except for residual gasoline and vapors which Port Allen was hired to remove. While the plaintiff was using water to flush gasoline out of the barge's piping system, an explosion occurred which burned him severely. Plaintiff collected compensation benefits from Port Allen Marine under the Longshoremen's Act, and brought this tort action against the owner and the operator of the barge.

In directing a verdict, the district court found that, at the time of the accident, the barge was in the sole control of Port Allen Marine, a specialist in gas-freeing barges. The court held the defendants did not supervise the gas-freeing process, and were not apprised of any facts which would lead them to believe Port Allen Marine was not fully qualified for the job. On appeal, the plaintiff alleges the court erred in limiting his cause of action to one stated by § 905(b) of the Longshoremen's Act; in not applying general maritime law under § 905(b); and in misapplying land-based law, including several sections of the Restatement (Second) of Torts (1965).

### § 905(b) Exclusive Remedy

The history of § 905(b) is important to the resolution of this case. The Long-

shoremen's Act provides compensation benefits to injured maritime workers. The Act forecloses negligence suits against the worker's immediate employer, but allows litigation against third parties. In the past, the Supreme Court adopted a liberal view of the third-party suit and held shipowners liable under a warranty of seaworthiness to injured employees of independent contractors working on board the ship. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The seaworthiness remedy went beyond negligence in two important respects. G. Gilmore & C. Black, The Law of Admiralty 542 (2d ed. 1975). First, the shipowner was liable for "transitory" defects which arose after his opportunity to correct them had passed. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Second, the shipowner was responsible for unsafe conditions caused entirely by the act of a third party, including the independent contractor. *Alaska Steamship Co. v. Patterson*, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed.2d 798 (1954). In 1972, however, Congress amended the Longshoremen's Act. Congress substantially raised the compensation benefits payable, eliminated the employee's unseaworthiness action and restricted his recovery from the shipowner to negligence. In the event of a negligence recovery against the vessel, the worker's employer would not be liable to the shipowner for such damages. On the other hand, if the injury was caused by the negligence of the worker's employer engaged in repair service, no action is permitted against the vessel. The remedy provided by the statute against the vessel "shall be exclusive." The language of § 905(b) now provides:

> In the event of injury to a [maritime worker] caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. . . . If such person was employed by the vessel to provide ship building or repair services, no such

action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

The language of the statute defeats the plaintiff's claim that § 905(b) is not his exclusive avenue of remedy. Furthermore, the elimination of the warranty of seaworthiness evinces congressional intent to curtail shipowner liability for conditions arising when the vessel is not within the owner's control and for injuries caused solely by independent contractors. Remaining is the maritime worker's right to sue for negligence only.

*General Maritime Law Under § 905(b)*

■ The legislative history, as recently discussed by this Court in *Gay v. Ocean Transport & Trading, Ltd.*, 546 F.2d 1233 (5th Cir. 1977), discloses an intent that the negligence action be a matter of uniform federal law, and, with certain exceptions, be designed to give the maritime worker the same rights against third parties as his land-based counterparts would have. One articulation of those rights, *Gay* noted, is the Restatement (Second) of Torts (1965). Accordingly, the plaintiff's second allegation of error must also be rejected. General maritime law no longer governs third party actions by maritime workers except to the extent that the maritime concepts have an analogy in land-based law. For instance, the Committee expressly intended that the admiralty concept of comparative negligence, rather than the common law rule as to contributory negligence would apply, and that the admiralty rule precluding "assumption of risks" as a defense would be applicable. But these concepts are not exclusively maritime, and do not alter the fact that general maritime law, as such, does not

control outcome of these third party actions.

### Negligence Under Land-Based Law Concepts

To evaluate the plaintiff's third claim, that the court misapplied land-based law to the facts of this case, it is necessary to examine each of the plaintiff's theories of liability.

#### I. Duty to Provide a Safe Place to Work

The plaintiff invokes the doctrine that a shipowner has a duty to provide invitees with a safe place to work. To the extent that doctrine encompasses liability without fault, a maritime concept, it no longer applies under § 905(b). *Gay*, 546 F.2d at 1239; *Bess v. Agromar Line*, 518 F.2d 738 (4th Cir. 1975). The doctrine does, however, have a land-based counterpart based on negligence. *See* Prosser on Torts § 80 (4th ed. 1971); Annot., 31 A.L.R.2d 1375.

■ In this case, however, the doctrine does not provide a basis for recovery by the plaintiff. Under traditional interpretation the duty to provide a safe place to work does not extend to protect employees of an independent contractor from dangers the contractor was hired to correct. *Whitlow v. Seaboard Air Line R. R.*, 222 F.2d 57 (5th Cir. 1955). The plaintiff's reliance on *Halecki v. United New York & N. J. Sandy Hook Pilots Ass'n*, 302 F.2d 840 (2d Cir.), *cert. denied*, 371 U.S. 825, 83 S.Ct. 46, 9 L.Ed.2d 64 (1962), is misplaced. In that case the shipowner directed the contractor's method of repair. *Halecki v. United New York & N. J. Sandy Hook Pilots Ass'n*, 282 F.2d 137, 142 (2d Cir. 1960), *cert. denied*, 364 U.S. 941, 81 S.Ct. 461, 5 L.Ed.2d 372 (1961). In contrast, the defendants here made no attempt to control the details of the work done by Port Allen Marine.

#### II. Duty on Employers of Independent Contractors

■ Plaintiff alleges the district court misapplied several sections of the Restatement which impose liability on those who employ negligent independent contractors.

*See* Restatement (Second) of Torts §§ 411, 413, 416, 423, 427 (1965). Freely admitting that Congress foreclosed any maritime liability of a shipowner to the employee of an independent contractor for negligence of that contractor, the plaintiff invokes land-based law which holds an employer responsible for negligence of his independent contractors when the work involves danger. He cites § 411, which imposes a duty to select a contractor carefully, and § 413, which says an employer should take steps to ensure that an independent contractor will take special precautions when performing work creating a peculiar, unreasonable risk of harm. Plaintiff also cites several sections which impose vicarious liability on the employer. Included are § 416, which imposes liability if the contractor ignores the employer's instructions and fails to take precautions; § 423, which makes the employer equally liable with the contractor when the work involves maintaining an instrumentality used in highly dangerous activities; and § 427, which imposes joint liability if the contractor fails to take precautions with respect to work involving inherent danger. These sections of the Restatement, however, cannot support the plaintiff's action because he is an employee of the independent contractor, and the sections only impose liability with respect to third parties.

The language of the cited sections is silent on this issue. While § 411 envisions liability to "third persons," §§ 413, 416 and 427 speak in terms of responsibility to "others," a term which arguably could include the employees of the independent contractor. *Cf. Halecki v. United New York & N. J. Sandy Hook Pilots Ass'n*, 282 F.2d 137, 139 (2d Cir. 1960), *cert. denied*, 364 U.S. 941, 81 S.Ct. 461, 5 L.Ed.2d 372 (1961) (employee of independent contractor covered under original Restatement of Torts § 344). *But cf.* Restatement (Second) of Torts § 344, comment c (duty is "for the protection of the public who enter").

In a series of opinions, the Tenth Circuit has interpreted this ambiguity to exclude employees of independent contractors from

protection. *Parsons v. Amerada Hess Corp.*, 422 F.2d 610 (10th Cir. 1970); *Eutsler v. United States*, 376 F.2d 634 (10th Cir. 1967); *see United States v. Page*, 350 F.2d 28 (10th Cir. 1965), *cert. denied*, 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966). The purpose for imposing a duty of care on the employer of an independent contractor is to ensure that his enterprise will bear the costs it creates, and will not escape liability for mishandling of inherently dangerous work by delegating it to an independent contractor. *Eutsler* reasoned that the employer's liability should not encompass injuries to the employees of the independent contractor because, under workmen's compensation laws, the contractor is already strictly liable for their cost. As argued in Tentative Draft No. 7, Restatement (Second) of Torts 17–18 (1962):

> it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him.

*See Eutsler, supra*, 376 F.2d at 636.

The plaintiff counters this argument by citing *Lindler v. District of Columbia*, 164 U.S.App.D.C. 35, 502 F.2d 495 (1974), a case in which the D.C. Circuit allowed an independent contractor's employee to recover from the contractor's employer under a common law theory similar to Restatement (Second) of Torts § 413. *See also Fitzgerald v. Compania Naviera La Molinera*, 394 F.Supp. 413, 417 (E.D.La.1975) (dictum). The D.C. Circuit rejected the reasoning of the note in the Tentative Draft. The court observed the note was not included in the final version of Restatement (Second), and said the courts should not assume costs would be passed to the employer when the employer had no legal duty to pay them. 502 F.2d at 499. Because the Longshoremen's Act is the workmen's compensation statute for the District of Columbia, the court also gave weight to several cases stating a policy favoring liberal construction of the Act to favor third party suits by injured employees. *See, e. g., Potomac Electric Power Co. v. Wynn*, 120 U.S.App.D.C. 13, 343 F.2d 295 (1965).

*Lindler,* however, represents a minority view of land-based law which has been undermined by the 1972 amendments to the Longshoremen's Act. The *Lindler* accident took place in 1970. The subsequent amendments to the Act expressly rejected the line of cases favoring third party suits upon which *Lindler* relied. Congress eliminated the shipowner's no-fault liability for unseaworthiness, and stated that land-based legal principles were to control the liability of third parties. To the extent the present Longshoremen's Act creates any special rules which affect the liability of those who hire independent contractors, it argues against employee suits. The Longshoremen's Act employer, unlike his land-based counterpart, cannot seek a contractual indemnity from the independent contractor whose negligence caused the injury. *See* 33 U.S.C.A. § 905(b) (Supp.1977). Furthermore, Congress intended for the rights of an employee to be the same whether he was hired by an independent contractor or was employed directly by the shipowner. *Smith v. M/V Captain Fred*, 546 F.2d 119, 123 (5th Cir. 1977); *cf.* Restatement (Second) of Torts § 423 (1965) (employer's liability to be same as contractor's liability). It makes little sense to allow a suit for negligent supervision of an independent contractor when liability for negligent supervision of the employer's own employees would be foreclosed by the compensation statute. The statute itself indicates that an employee hired by the ship directly cannot sue the ship for injury "caused by the negligence of persons engaged in providing . . . repair services to the vessel." 33 U.S.C.A. § 905(b) (Supp.1977). The Committee reports indicate the word "persons" not only included fellow servants, but was also intended to include the shipowner in his capacity as an employer of the workers doing the repair work. G. Gilmore & C. Black, The Law of Admiralty 450 (2d ed. 1975); *see* H.R. 92–1441, 92d Cong., 2d Sess. (1972), *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4698, 4705.

*Lindler* also represents a minority view among the federal circuits. Congress in-

tended a uniform federal interpretation of § 905(b). For this Circuit to follow *Lindler* would militate against uniformity. As noted above, the Tenth Circuit has twice held the employee of an independent contractor cannot recover from the employer of the contractor. *Eutsler, supra,* 376 F.2d at 634, *Parsons, supra,* 422 F.2d at 610. In *Eutsler,* the court said that although the relevant language of the Tentative Draft was not included in the final Restatement (Second), the language had nevertheless become an accepted part of the judicial gloss on the text. 376 F.2d at 636. Both cases involved situations where the court was not bound by applicable state law and so was free to determine the most desirable rule. Confronted with a similar opportunity, the Second Circuit reached the same conclusion. *Lipka v. United States,* 369 F.2d 288 (2d Cir. 1966), *cert. denied,* 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967). The Eighth Circuit has split. In its most recent case, the Circuit affirmed a district court decision concluding that, as a matter of general law, the employee should not recover. *Olson v. Red Wing Shoe Co.,* 456 F.2d 1299 (8th Cir. 1972), *aff'g Olson v. Kilstofte & Vosejpka, Inc.,* 327 F.Supp. 583 (D.Minn. 1971). In an earlier case, however, the Eighth Circuit assumed without discussion that the opposite rule would apply. *Associated Engineers v. Job,* 370 F.2d 633, 647 (8th Cir. 1966), *cert. denied sub nom., Troy Cannon Const. Co. v. Job,* 389 U.S. 823, 88 S.Ct. 59, 19 L.Ed.2d 77 (1967), *followed in Hagberg v. City of Sioux Falls,* 281 F.Supp. 460 (D.S.D.1968). The Fifth Circuit, interpreting language in 27 Am.Jur. Independent Contractors § 39 which parallels that of the Restatement, has held the employee cannot recover. *Corban v. Skelly Oil Co.,* 256 F.2d 775 (5th Cir. 1958). Applying the Restatement under the influence of a binding state decision, two other Circuit decisions have also denied recovery. *Sword v. Gulf Oil Co.,* 251 F.2d 829 (5th Cir.), *cert. denied,* 358 U.S. 824, 79 S.Ct. 41, 3 L.Ed.2d 65 (1958) (Texas); *Craig v. Olin Mathieson Chemical Corp.,* 427 F.2d 962 (7th Cir.), *cert. denied,* 400 U.S. 964, 91 S.Ct. 365, 27 L.Ed.2d 383 (1970) (Illinois). Two decisions applying the law of other states have reached the opposite conclusion. *United States v. DeCamp,* 478 F.2d 1188 (9th Cir.), *cert. denied,* 414 U.S. 924, 94 S.Ct. 232, 38 L.Ed.2d 158 (1973) (California); *Grogan v. United States,* 341 F.2d 39 (6th Cir. 1965) (Kentucky) (dictum).

### III. *Strict Liability*

■ The plaintiff also asserts that because gas-freeing a vessel is "ultrahazardous," the barge owner should be strictly liable for his damages under Restatement (Second) of Torts § 519 (1977). Again, however, plaintiff's status as an employee of the independent contractor defeats his claim. He cannot sue Port Allen Marine for strict liability because it has paid compensation benefits, 33 U.S.C.A. § 905(a) (Supp.1977). He cannot sue the defendants because the Longshoremen's Act only allows him to sue them for their "negligence," a phrase which on its face does not encompass strict liability. *See Dalehite v. United States,* 346 U.S. 15, 44–45, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (Federal Tort Claims Act). The congressional committee reports accompanying the 1972 amendments emphasize an intent to eliminate unseaworthiness, a strict liability concept, and to limit the liability of the shipowner to injuries for which the shipowner was at fault. It would be inappropriate to judicially read strict liability into the text of the statute in view of obvious congressional intent. *See Brown v. Ivarans Rederi A/S,* 545 F.2d 854, 861 (3d Cir. 1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977) (vicarious liability inappropriate under § 905(b)). *Contra Streach v. Associated Container Transport, Ltd.,* 388 F.Supp. 935, 940 (C.D.Cal.1975); 29 A.L.R.Fed. 771 (1976).

### IV. *Duty to Maintain Premises Safe for Invitees*

■ The plaintiff alleges that even though the gasoline was an "open and obvious" danger, the defendants are liable as landlords who failed to take due care with respect to a dangerous condition aboard

**1036**

their barge. Restatement (Second) of Torts §§ 343, 343A (1965). *Gay*, in dictum, recognizes such a cause of action if invitees aboard the vessel, though aware of the danger, either could not appreciate it or could not avoid it. *Brown v. Mitsubishi Shintaku Ginko*, 550 F.2d 331 (5th Cir. 1977), dealt with these Restatement sections in a case where the plaintiff employee of an independent contractor was cleaning the cargo hold of defendant's vessel. A dangerous condition developed and plaintiff was injured by a falling rack. The Court held that even if the ship's crew were aware of the danger, there could be no duty owed by the ship where the hazardous condition was created by the stevedore's employees, and the ship's personnel were less capable of abating the danger than the independent contractor's employees.

Here the danger inherent in removing gasoline and fumes from a barge was well known to all concerned. At oral argument the Court was informed that the reason for placing Port Allen Marine on a remote stretch of the Mississippi River was to limit the possible damage an explosion would cause. The facts of this case present no basis for imposing a duty of care on the defendants. Port Allen Marine was found by the trial court to be a specialist possessing expertise in "gas-freeing" barges. As in *Brown*, the plaintiff here was "the person best able to appreciate the potential consequences of the danger." 550 F.2d at 334. The precise reason for plaintiff's employment was to make an unsafe condition safe.

V. *Limitation of Testimony*

Plaintiff's final contention is that the trial court erred in refusing to allow expert testimony concerning the design of the barge. While the plaintiff correctly asserts that exclusion of the doctrine of unseaworthiness does not prevent recovery for actual negligence in vessel design, the plaintiff misapprehends the ruling of the trial court. The court questioned the expert, who stated the barge had a customary design and was reasonably fit for its intend-

ed purpose. The trial court concluded that the expert had established the vessel was not negligently designed, and that any critical testimony he might give would go to unseaworthiness. The court then correctly held such testimony inadmissible.

AFFIRMED.