Victoria Ann Joseph **MAYFIELD**, Individually and as personal representative of decedent, Keith Mayfield, and for and on behalf of her minor child Jeannine Marie Mayfield

v.

**WALL SHIPYARD, INC.** and Aetna Life and Casualty Company

Civ. A. No. 80–2298.

United States District Court, E. D. Louisiana.

March 4, 1981.

---

606

David E. Caruso, Jr., Law Offices of Frederick J. Gisevius, Jr., New Orleans, La., for plaintiffs.

Bert M. Cass, Jr., A. Wendel Stout, Deutsch, Kerrigan & Stiles, New Orleans, La., for defendant Wall Shipyard.

Lloyd W. Hayes, Adams & Reese, New Orleans, La., for defendant Aetna Life and Casualty Co.

**DUPLANTIER, District Judge.**

Plaintiff, Victoria Ann Mayfield, brought this suit as personal representative and widow of Keith Mayfield, on behalf of herself and her minor child. Keith Mayfield was killed in an accident which occurred while he was working for defendant Wall Shipyard, Inc. Plaintiff asserted claims against Wall and its insurer under the Jones Act and 33 U.S.C. § 905(b), in the alternative. The court granted a motion for summary judgment filed by the defendants on the Jones Act claim, holding that the decedent was not a member of a crew of a vessel and therefore not entitled to the protection afforded by the Jones Act. The claim under 33 U.S.C. § 905(b) was tried to the court without a jury.

The threshold question is whether the pontoon on which the decedent was standing at the time of the accident was a vessel. To assert a 905(b) claim the injury must have been caused by the negligence of a vessel. Unless the pontoon was a vessel, there is no basis for asserting a claim under 905(b); plaintiff's only claim would be under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., under which she is receiving benefits. Because we find that the pontoon in question was not a vessel, plaintiff's suit must be dismissed.

The structure at issue was a steel pontoon float, approximately twenty feet long, six to ten feet wide and four feet deep. It had no means of self-propulsion, no navigation lights, no equipment, no anchors, no raked bow, no railings, no crew quarters, no feeding facilities and no bilge pumps. It had no hatches, and nothing was ever stored beneath its deck. The only access to the area below the deck was through two small holes into which hoses could be inserted to pump out water which might accumulate below deck. It was simply a rectangular steel floating platform which was shaped like a matchbox.

The two most important factors in determining whether a structure is a vessel are the purpose for which the craft is constructed and the business in which it is engaged. *Blanchard v. Engine & Gas Compressor Services, Inc.*, 575 F.2d 1140 (5th Cir. 1978); *Hicks v. Odeco*, 512 F.2d 817 (5th Cir. 1975). The pontoon was not designed for use as a vessel but rather only to facilitate the repair of ships and barges at the dry dock facility. The structure was not used as a vessel. It had two principal uses: to serve as an extension of a dry dock to allow access to those portions of barges being repaired which extended beyond the dry dock work surface, and to move material from one location to another within the shipyard.[1] The pontoon had never travelled outside of the shipyard and was never moved with men on it. To get on the pontoon, workers would walk to the end of the dry dock and step on the pontoon after it had been moved to the area of the dry dock where it was needed, usually the end of the dry dock.

In its barge and boat repairing business, defendant uses nine of these pontoons, all of which it built itself. One or more is usually stationed near each of its five dry docks. These pontoons have several characteristics of a typical barge used in commerce, the type which clearly is a 905(b) or Jones Act vessel: they float, they can be moved by use of a "tug" (in this case a work boat, often a small 20 foot boat), and as noted previously, they are periodically used to carry on their decks material such as steel plates from one location in the shipyard to another, a distance usually of less than two hundred feet. Such similarities are not sufficient, however, to classify these pontoons as "vessels" within the provision of § 905(b) or the Jones Act.

Considering the totality of the physical characteristics of the pontoon, its intended purpose, and the business it was engaged in, the court concludes that the structure on which the decedent was standing at the time of the accident was not a vessel.

---

1. On the occasion of the accident which caused plaintiff's death, the pontoon was being used to move steel plates from the dock area to the side of the barge under repair; the plates were too heavy and cumbersome to move through the dry dock area.

■ Even if the court were to find that the pontoon in question was a vessel, the plaintiff's suit would have to be dismissed, because she has failed to carry the burden of proving vessel negligence. Under 905(b), an employee can sue the vessel on which he is injured, even though the owner of that vessel was also his employer. *Smith v. Captain Fred*, 546 F.2d 119 (5th Cir. 1977). For the employer/shipowner to be liable under 905(b), the injury must be attributable to him in his capacity as vessel owner, not as ship repairer or builder. 33 U.S.C. § 905(b). The distinction is between vessel negligence and shipyard negligence.

■ For the purposes of the plaintiff's 905(b) claim, defendant Wall Shipyard wears two hats: it is the owner of the pontoon on which the accident occurred and it is the operator of the shipyard by which the decedent was employed. Because plaintiff has not carried the burden of proving that the decedent's death was caused by its negligence as a "vessel" owner, Wall Shipyard would not be liable under 905(b) even if the pontoon were a vessel.

■ The cornerstone of the doctrine of negligence is behavior which should be recognized as involving unreasonable danger to others; there must be a foreseeable risk that the injury will occur, sufficiently great to lead a reasonable person to anticipate and guard against it. In the absence of such foreseeability, there is no negligence.

■ The exact chain of events leading up to the accident in this case is unclear. The only expert who testified, a chemist employed by defendant Aetna, speculated that flammable gases or vapors may somehow have leaked into the compartments of the pontoon, though "how or when it may have entered the compartment is not known" (Plaintiff's Exhibit 7, p. 4). If the expert's speculation is accepted that the explosion was caused by the ignition of gas which had accumulated in the compartments below the deck of the pontoon, that accumulation would have been the result of Wall's actions as a shipyard operator, not as a "vessel" owner. The area below the deck of the pontoon was never used to carry anything. The probable sources of the gas were manifolds or hoses containing MAPP, a gas used for burning and cutting metal in the ship repair operation. Both the manifolds and the hoses are pieces of equipment which were used by Wall in their capacity as shipyard operators. Any negligence would be shipyard negligence, for which Wall would not be liable under 905(b). The alleged escape of the gas from the ship repair equipment is not connected in any way to Wall's ownership of the pontoon on which the explosion occurred.

■ Plaintiff would contend that Wall's "vessel" negligence lies in its failure to inspect the pontoon and insure its safety, before it was used by the decedent. For Wall to owe this duty to inspect, there must be a foreseeable risk that the gas could accumulate in the compartments of the pontoon and cause the explosion. That foreseeability does not exist in this case. As "vessel" owner, Wall had no way of anticipating that gas might accumulate in the pontoon. The only openings on the pontoon through which the gas might enter the compartments were the two eight inch holes on the deck. The likelihood that a particularly malodorous gas could escape from the ship repair equipment and enter the compartments in sufficient quantity to create a risk of explosion and yet not be detected by its odor, is not sufficiently great to lead a reasonable man to anticipate and guard against it. This tragic explosion was a freak accident which Wall as vessel owner could not have foreseen, and therefore owed no duty to guard against.

■ Moreover, plaintiff has failed to prove by a preponderance of evidence that the cause of the explosion was gas which had accumulated below the deck of the pontoon. There are not sufficient facts proven for the court to hold that the cause of the explosion was gas which had accumulated in the hold. The speculation that this was the cause of the explosion is based on the chemist's examination of the pontoon in the scrap yard after it had been retrieved from the canal where it had sunk after the explo-

sion. The chemist speculated that the explosion of the gases in the compartment of the pontoon caused the deck of the larger compartment to be separated from the pontoon.

While it is certainly a possibility that the explosion was caused by the accumulation of gas in the hold, the plaintiff has failed to carry the burden of proving that this was the cause. The deck of the pontoon could have come off when the pontoon was being raised after it sank or while it was being towed before the sinking; there is no proof that it came off as a result of the explosion. It is just as likely that the explosion was caused by the ignition of MAPP in the air in the vicinity of the pontoon. At the time of the explosion the fuel gas was being used in cutting and burning operations on the barge at the dry dock where the pontoon was stationed. The explosion occurred as soon as the decedent commenced his electric welding operation, while he was standing on the deck of the pontoon. Thus the fumes or vapors which ignited may have been in the air around the pontoon, rather than inside of it. In this situation the explosion would have had no connection with the "vessel", except that the pontoon served as the situs. Thus there would be no "vessel" negligence. Claims under 905(b) cannot be based on strict liability. *Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030 (5th Cir. 1977).

For the foregoing reasons, the plaintiff's sole remedy is under the compensation provisions of the Longshoremen's and Harbor Workers' Compensation Act, under which plaintiff is now receiving payments.