Sarah DUPLANTIS, et al., Plaintiffs-Appellants Cross-Appellees,

v.

ZIGLER SHIPYARDS, INC., et al., Defendants,

Triangle Shifting and Fleeting, Inc., Cross-Claimant-Appellee Cross-Appellant.

No. 81–3802

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 29, 1982.

George & George, Ltd., James A. George, Baton Rouge, La., for Duplantis, Charles & Smith.

Cline, Miller & Richard, Larry T. Richard, Rayne, La., for Bertha Broussard.

Plauche, Smith, Hebert & Nieset, James R. Nieset, Lake Charles, La., for Triangle Shifting & Fleeting.

Appeals from the United States District Court for the Western District of Louisiana.

Before BROWN, RUBIN and JOLLY, Circuit Judges.

PER CURIAM:

Three employees of Zigler Shipyards perished and several others were injured in a tragic explosion aboard a tank barge brought to Zigler for repairs. The district court granted summary judgment in favor of Triangle Shifting and Fleeting Co., the barge owner, on the basis that, under the circumstances, Triangle had not violated any duty of care imposed on a vessel owner by § 905(b) of the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C. § 905(b) (1976). Because the evidentiary material adduced in support of the motion for summary judgment is sufficient to establish that there was no genuine dispute concerning any material factual issue and because, in those circumstances, Triangle violated no legal duty it owed the injured employees, we affirm.

I.

Zigler Shipyards had made major repairs to Triangle's tank barge. After the barge was returned to service, Triangle discovered a small leak. It returned the barge to Zigler for repair on the morning of November 8, 1976.

Andrew LeDoux, captain of the tugboat that took the barge to the shipyard and an employee of Triangle, deposed that he warned Zigler employees that the barge had transported a cargo of highly explosive light crude oil. He also stated that he warned the Zigler personnel to be sure that the barge was gas-free before welding the pinhole. There was no evidence to the contrary.

LeDoux, on Zigler's instructions, moved the barge to a gas-freeing dock and Zigler employees performed gas-freeing operations, ascertaining that the barge was free of gas with an explosimeter manufactured by the Mine Safety Appliance Co. No one obtained the gas-free certificate required by federal regulations. The explosimeter was defective and failed to disclose that gas was in fact present. When Zigler employ-

ees struck the first arc to weld the hole, the explosion occurred.

The injured workers and the estates of those deceased sued Zigler, Triangle, and Mine Safety. The plaintiffs settled with Mine Safety and the district court granted motions for summary judgment in favor of Zigler and Triangle. Only the judgment in favor of Triangle is appealed.

## II.

In *Scindia Steam Navigation Co. v. DeLos Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the Supreme Court settled a dispute among the circuits by articulating principles governing a vessel owner's duty to the employees of a stevedore. We have held that the *Scindia* principles also govern the vessel owner's duty to independent contractors and their employees. *Hill v. Texaco, Inc.,* 674 F.2d 447, 451 (5th Cir. 1982).

The *Scindia* court enunciated three principles. First, the vessel owner must exercise care to make the portions of the ship that it turns over to the stevedore safe before the stevedore begins work. In discharging this duty the owner is entitled to rely on the stevedore's performance of its task with reasonable care. The vessel owner must also warn the stevedore of any hidden unsafe conditions on the ship of which the owner is, or should be, aware. *Scindia,* 451 U.S. at 165, 101 S.Ct. at 1621, 68 L.Ed.2d at 11. Second, once the stevedore begins its operations, the vessel owner has no duty to supervise its work or to inspect the area assigned to the stevedore, unless contract provision, positive law, or custom impose such a duty. In short, the vessel owner has no general duty to monitor the stevedore's operations, but is entitled to rely on the stevedore's expertise and reasonableness. This reliance, however, is not justified if some explicit duty is recognized by the parties or imposed by law. *Id.* at 171, 101 S.Ct. at 1624, 68 L.Ed.2d at 14. Third, the vessel owner has a duty to protect the stevedore's employees during the stevedore's operations only if the owner becomes aware that the ship or its gear poses a danger to the stevedore's employees *and* the owner learns that the stevedore is acting unreasonably in failing to protect its employees. The vessel owner is charged with knowledge of a defect if the danger develops during the stevedore's operations and the owner has actual knowledge of it, or if the danger exists at the outset, in which case the owner "must be deemed" to have knowledge. *Id.* at 175, 101 S.Ct. at 1626, 68 L.Ed.2d at 17. Concluding that there are no material factual questions in dispute, we apply these principles.

## III.

### A. Duty to Provide a Safe Working Place

Triangle had a duty to warn Zigler of the hidden danger from the presence of gas on the barge. The plaintiffs presented no evidence to contradict Captain LeDoux's testimony that he warned Zigler's employees of the danger of an explosion. This satisfied Triangle's duty to warn of hidden dangers.

*Scindia* imposes an additional duty on the vessel owner turning its ship over to a stevedore. The owner must exercise care to make the portions of the ship turned over to the stevedore safe. The district court held that, under our decision in *Hess v. Upper Mississippi Towing Corp.,* 559 F.2d 1030 (5th Cir. 1977) *cert. denied,* 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978), the vessel owner here was not responsible.

In *Hess,* the vessel owner had taken its barge to a shipyard which specialized in gas-freeing. The yard held itself out as an expert in gas-freeing, and this was apparently the only function performed at the facility. We held that the vessel owner, which the plaintiff sought to hold liable for an explosion because of the faulty gas-freeing operation, could not be asked to "protect employees of an independent contractor from dangers which the contractor was hired to correct." 559 F.2d at 1033.

The district court properly followed *Hess.* Zigler gas-freed twenty to sixty vessels a year. Although gas-freeing the barge was not the only function that Zigler was to

perform, this work was critical to its ability to repair the pinhole. It was, in short, one of the "dangers which the contractor was hired to correct." Triangle was not required to gas-free the barge itself in order to satisfy *Scindia*'s requirement that it turn the vessel over to Zigler "in such a condition that an expert and experienced [contractor] will be able to carry on its ... operations with reasonable safety to persons and property." *Scindia,* 451 U.S. at 167, 101 S.Ct. at 1621, 68 L.Ed.2d at 12. As the *Scindia* Court noted, a vessel owner is entitled to rely on the contractor to do a "workman-like" job. *Id.* at 170, 101 S.Ct. at 1623, 68 L.Ed.2d at 14.

### B. *Duty to Supervise or Inspect*

 *Scindia* held that the vessel owner has no duty to supervise or inspect the contractor's operations unless such a duty is imposed by contract, law, or custom. The plaintiffs argue that such a duty was imposed in this case by both law and custom. 46 C.F.R. § 35.01–1 (1981) provides that, before any welding can be performed on tanks that previously contained flammable material, a maritime chemist must inspect the vessel and certify that it is gas-free. *Id.* § 35.01–1(c), (d). It is uncontested that the inspection was not performed and the certificate was not obtained in this case.

The district court was "unpersuaded that the ... regulation imposed ... a duty" on Triangle to secure the certificate. We need not reach the legal question whether it is ever the duty of the vessel owner to obtain the certificate because we conclude that the bare-bones regulation does not impose on the vessel owner the non-delegable duty to secure a certificate when the owner engages a competent independent contractor to do the work that must be performed before the certificate can be obtained and to continue thereafter with other work that can be executed only after gas-freeing.

Only two courts have interpreted this regulation. In *Copeland v. Oil Transport,* 362 F.Supp. 11, 18–19 (S.D.Ala.1973), the court in dicta said the responsibility for securing the gas-free certificate rested on the vessel owner. In *Bossard v. Exxon Corp.,* 559 F.2d 1040, 1041–42 (5th Cir. 1977) (per curiam), *cert. denied,* 435 U.S. 934, 98 S.Ct. 1510, 55 L.Ed.2d 532 (1978), the court intimated, without deciding, that the regulation applied to the vessel owner.

Here, as we have pointed out, gas-freeing was a necessary first step in doing the work Zigler had undertaken. Its work would have been interrupted if the owner were then required to intervene and to obtain the certificate before Zigler could proceed. Zigler was both experienced and competent and was alerted to the necessity for gas-freeing. The plaintiffs presented no evidence of a practice, custom, or interpretation of the regulation that would require it, a relatively inexperienced firm, to intercede and do what Zigler could do better and was engaged to do. Even if the regulation imposes a duty on the vessel owner, the duty is delegable and the district court was justified, in the absence of evidence to the contrary, in concluding that Zigler had assumed it. Therefore, the district court properly concluded that the plaintiffs failed to meet their burden of proving that Triangle violated its duty by failing to secure the certificate.

Finally, the plaintiffs argue that custom in the industry placed the duty of securing the gas-free certificate on the vessel owner. All of the witnesses who testified from personal knowledge deposed that, in fact, Zigler always called the marine chemist and secured the certificate. One witness deposed that the decision was, in his experience, made after consultations between the vessel owner and the shipyard. He admitted, however, that when the decision was made to secure the gas-free certificate, Zigler was responsible for actually obtaining it.

In short, the evidence about who secured the certificate did not establish that industry custom placed that duty on the vessel. The plaintiffs had ample opportunity to adduce evidence about custom and failed to do so. The district court did not err in granting summary judgment on this question.

## C. *Duty to Intervene*

■ There is no evidence that Triangle ever became aware of any defects developing during Zigler's repair operation. Hence, the third part of the *Scindia* test imposed no duty on Triangle to protect Zigler's workers.

For these reasons, the judgment of the district court is AFFIRMED.