**Rudolph MAYER**

v.

**LYKES BROTHERS STEAMSHIP CO., INC.**

Civ. A. No. 82–5637.

United States District Court, E.D. Louisiana.

May 4, 1984.

Harris M. Dulitz, Metairie, La., Leonard A. Washofsky, Hess & Washofsky, New Orleans, La., Drury, Grossel-Rossi & Tabb, Frederick A. Miller, New Orleans, La., for Aetna Cas. & Sur. Co.

William E. Wright, Gary A. Hemphill, Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for Lykes Bros.

## OPINION

ARCENEAUX, District Judge.

Plaintiff, Rudolph Mayer, instituted this suit against Lykes Brothers Steamship Co., Inc. ("Lykes") under § 905(b) of the Longshoremen's and Harborworkers' Compensation Act ("LHWCA") seeking damages for personal injuries allegedly sustained on June 11, 1982, while plaintiff was boarding defendant's vessel, S/S SHIRLEY LYKES. At the time of the alleged accident, plaintiff was working as a refrigeration mechanic for Bailey Corporation which had been engaged to repair an ice machine aboard the vessel.

Trial before the Court without a jury was held on February 27, 1984, and the matter was taken under submission after the Court deferred ruling on defendant's Fed. R.Civ.P. 41(b) motion. Having thoroughly

reviewed the evidence, the memoranda of counsel and the applicable law, the Court now issues its opinion.

### Facts

The operative facts surrounding the accident are firmly established by the testimony of Mr. Mayer. After receiving the Lykes assignment at the Bailey shop on June 11, 1982, plaintiff proceeded to the vessel. Upon arrival at 8:15 A.M., he immediately boarded the vessel in order to report to the chief engineer. In so doing, he used the gangway which was the only method of ingress and egress available to the plaintiff, crewmembers and other teams of repair workers engaged by the ship on that day. The gangway was attached to the vessel on her side mid ship at a 35°–40° angle and consisted of aluminum treaded non-skid steps approximately 12 inches deep and 3½ feet wide. Rope handrails were provided on both sides of the gangway.

After speaking with the chief engineer and inspecting the ice machine, plaintiff departed the vessel to go to his truck in order to collect necessary tools. He reboarded the vessel and undertook repair operations until approximately 11:45 A.M., when he broke for lunch and again departed the vessel via the gangway.

Upon his return from lunch at 12:45 P.M. plaintiff arranged his tools for carriage, put his right hand on the handrail and began to ascend the gangway to continue his work. Shortly thereafter, plaintiff slipped on the third or fourth step of the gangway. In response, he grabbed the handrail tightly and caught his balance; in so doing, he violently twisted his back. After retrieving his glasses which had fallen, he examined the step and discovered a 6 to 7 inch patch of a clear, slippery substance which he could not identify. He saw only his own smeared footprints marking this substance. While he had not noticed this substance on any of his earlier trips on the gangway, he did not report it to anyone at that time and claims to have

seen the substance again later in the day when he finally departed the vessel.

Mr. Mayer initially underestimated the severity of the injury he received. Instead, he carried on with his work and did not report the accident immediately because he felt that soaking in a hot tub would bring relief. However, he began to experience "real pain" at 10:00 P.M. that night, and both reported the accident to his employer and sought medical treatment shortly thereafter.

Likewise, the evidence clearly established that no problem with the gangway was reported by anyone else on the date in question. Captain Warren Weymouth testified that while the S/S SHIRLEY LYKES was in port, the watch officers were instructed to inspect the ship and keep logs. The crew is generally instructed to watch for safety problems. Two contract security guards were engaged on June 11, 1982, to see that unauthorized persons were kept off the ship. While these guards did not maintain the gangway, they were expected to inform the ship's officer on watch if they noticed anything wrong. The captain testified that control of the gangway was not surrendered.

Captain Weymouth also testified that he personally made inspections on the date in question. Specifically, he recalls checking the gangway at 11:15–11:30 A.M. as he departed the ship and again on his return shortly before 1:00 P.M.; at both times he noticed nothing wrong with the gangway. George Bradley, the port engineer on duty, testified that he traversed the gangway approximately once every hour, or 15–28 times on the date in question, and never noted a foreign substance on a step.

The Court notes that this case is based only on the presence of the offending substance on the gangway step; the design and construction of the gangway itself is not being challenged. While the Court considers the testimony of the two Lykes witnesses as establishing the relative invisibility of the substance, it does not believe that such testimony undermines plaintiff's version of how the accident occurred or that

the accident occurred. Of these witnesses, only Mr. Mayer closely examined the step and he readily admitted that the substance was not easily seen.

However, the Court cannot ignore the fact that evidence regarding the nature or source of the offending substance was unavailable, albeit unavailable primarily due to plaintiff's stoicism and restraint in reporting the mishap. At the same time, the evidence does preponderate that the substance was on the step only for a short time prior to plaintiff's accident, as evidenced by plaintiff's own testimony that only his footprints had smeared the substance. Therefore, having unequivocally found that the accident occurred exactly as Mr. Mayer described, the Court examines the pertinent law.[1]

### Law

Section 905(b) of the LHWCA provides in relevant part as follows:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party action in accordance with the provision of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injured occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

However, the statute does not specify the acts or omissions of the vessel that would constitute negligence.

The United States Supreme Court addressed the standards applicable to shipowners in § 905(b) actions involving cargo operations in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). While adopting a standard of "reasonable care under the circumstances of each case," the Court held:

The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools and work space to be used in the stevedoring operations; and if he fails at least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman. It is also accepted that the vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas or from equipment under the active control of the vessel during the stevedoring operation. *Scindia, supra* at 167, 101 S.Ct. at 1622.

Courts have subsequently applied the rationale of *Scindia* to any independent contractor or harborworker covered by the LHWCA. *Duplantis v. Zigler Shipyard, Inc.*, 692 F.2d 372, 374 (5th Cir.1982); *Hill v. Texaco, Inc.*, 674 F.2d 447, 451 (5th Cir. 1982). However, the *Scindia* court itself noted that the standard of reasonable care under the circumstances "[i]nevitably ... will undergo refinement as it is applied to various categories of cases." *Scindia, supra* 451 U.S. at 164, fn. 10, 101 S.Ct. at 1620, fn. 10. The Fifth Circuit has held that the shipowner's duties set forth in *Scindia* are "subtly altered" in the context of repair operations. *Stass v. American Commercial Lines, Inc.*, 720 F.2d 879, 882 (5th Cir.1983).

In undertaking to articulate the "Scindianese" duty owed by Lykes, readily distinguishable factual circumstances surround-

---

1. The Court has considered Mr. Mayer's testimony to the effect that he noticed a gangway security guard napping at the time of his accident as irrelevant, in light of undisputed testimony indicating that the guards were not hired to ensure that the gangway was properly maintained.

ing the injury *sub judice* render the fine-lined holdings of *Scindia* inapplicable. The Supreme Court's rulings as they relate to the shipowner's duties to discover and intervene are both directed toward dangerous conditions which arise within the confines of cargo operations assigned to the stevedore and over which the shipowner has surrendered control. *Scindia, supra* 451 U.S. at 172, 175–176, 101 S.Ct. at 1624, 1626–1627. *See also: Hill, supra* at 451. While this control-based distinction has aided courts in analyzing post-*Scindia* repair cases which focus on hazards or risks inherent in carrying out the repair work for which a covered worker has been hired, it is irrelevant to the issues facing this Court. *See: Stass, supra; Duplantis, supra; Hill, supra.* It is undisputed that Lykes retained control over the only means of access to the vessel on the day in question, and that the gangway was not involved in any repair operation at that time.

Similarly, the Supreme Court's concern with the "open and obvious" nature of the particular dangerous condition it faced distinguishes *Scindia* from this matter. While other Courts have found "obviousness" to be definitive, Mr. Mayer slipped on a clear, transparent substance only visible on close examination. *See: Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1037–1040 (5th Cir.1983). In this regard, the Court notes that the relative invisibility of the clear substance on the gangway step was a perception equally shared by all concerned. Distinguishable in this respect is the Fifth Circuit's upholding a finding of negligence where the shipowner provided access to its vessel with a swingrope and the "the danger attendant to use of the swingrope was obscured from [plaintiff's] vision ..." and created by the owner who knew or should have known of its existence. *Musial v. A & A Boats, Inc.,* 696 F.2d 1149, 1153 (5th Cir.1983). Finally, while *Scindia* has been interpreted to hold a shipowner "actively" negligent in furnishing a worker with an obviously unsafe ladder to perform assigned tasks where such use is necessary and unavoidable, distinction between latent and patent hazardous conditions was drawn. *Pluyer v. Mitsui O.S.K. Lines, Ltd.,* 664 F.2d 1243 (5th Cir.1982).

■ In addition, pre-*Scindia* law exonerating a shipowner from liability for injury caused by a transitory condition unknown to the shipowner, has survived post-*Scindia* review. *Moser v. Texas Trailer,* 694 F.2d 96 (5th Cir.1982). While such holdings are conditioned on creation by independent contractors over whom the shipowner retained no control, the record *sub judice* is void of evidence which indicates any action by any crewmember that either caused the accident or the condition. *Compare: Stockstill v. Gypsum Transportation,* 607 F.2d 1112 (5th Cir.1979) cert. den. 451 U.S. 969, 101 S.Ct. 2044, 68 L.Ed.2d 347 (1981). Also, it is clear that mere presence of the vessel's crew on the ship does not prove knowledge of the hazardous condition. *Hill, supra* at 450.

■ Despite having recognized that retention of control over the gangway and the hidden and transitory nature of the condition which caused Mr. Mayer's accident distinguishes the matter *sub judice* from leading Fifth Circuit post-*Scindia* jurisprudence, the Court is not without guidance from *Scindia* itself. It is clear that the standard of negligence requiring "reasonable care under the circumstances" prevails.[2] Therefore, Lykes had a duty to exercise reasonable care to see that the gangway was maintained in a safe condition for use. *See: Davis v. Partenreederei M.S. Normannia,* 657 F.2d 1048 (9th Cir. 1981); *Sarauw v. Oceanic Navigation Corp.,* 655 F.2d 526 (3rd Cir.1981) cert. den. 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982).

■ It is likewise clear to this Court that those aboard the ship did carry out this duty by reasonably surveiling and inspecting the gangway area throughout the

---

**2.** This Court found only one case which interpreted *Scindia* as rejecting the "reasonable care" standard. *Lemon v. Banks Lines, Ltd.,* 656 F.2d 110 (5th Cir.1981). *Compare: Scindia, supra* 451 U.S. at 164, fn. 10, 101 S.Ct. at 1620, fn. 10.

course of the day in question. Even if this were not the Courts' conclusion, no evidence exists which would indicate that a reasonable inspection would have revealed the clear substance. Its relative invisibility does not place a heavier duty on the defendant, although it does offer an explanation for the accident. In sum, the Court does not believe that a shipowner whose ship is in port undergoing various repair operations is under a duty to insure against dangers attendant to hidden, unknown and transitory conditions in common areas used by repair workers; neither is the shipowner required to anticipate and scrutinize for such conditions where a reasonable inspection reveals nothing suggestive of same.

In addition to this general duty, the *Scindia* interpretation of the Congressional intent behind § 905(b) included the following example provided in the Senate Committee's report:[3]

"So, for example, where a longshoreman slips on an oil spill on a vessel's deck and is injured, the proposed amendments to Section 5 would still permit an action against the vessel for negligence. To recover, he must establish that: 1) the vessel put the foreign substance on the deck, or knew that it was there and willfully or negligently failed to remove it; or 2) the foreign substance had been on the deck for such a period of time that it should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances." *Scindia, supra* at 170, fn. 16, 101 S.Ct. at 1623, fn. 16.

When the facts presented at trial are applied to this test, it is obvious that plaintiff fails on both prongs to establish liability on the part of Lykes.

Rather, any potential recovery in this Court would require invocation of theories of strict liability, which are expressly forbidden under the 1972 Amendments to the LHWCA. In providing a fault-base

remedy against a vessel in § 905(b), Congress also provided that the remedy be exclusive. *Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030 (5th Cir.1977) cert. den. 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978). The remedies which do remain available to Mr. Mayer, who clearly sustained a seriously debilitating injury while performing his job, involve those compensation benefits and awards owed under the Act. Accordingly,

IT IS ORDERED that judgment be entered in favor of defendant, Lykes Brothers Steamship Company, Inc., and against plaintiff, Rudolph Mayer. The intervention of Bailey Corporation and Aetna Casualty and Surety Company is dismissed. Each party is to bear its own costs.

---

3. S.Rep. No. 92–1125, pp. 10–11 (1972). The House of Representatives Committee Report, H.R.Rep. No. 92–1441 (1972), U.S.Code Cong. & Admin.News 1972, p. 4698, is in all relevant aspects identical to the Senate Report. *See: Scindia, supra* at 166, fn. 13, 101 S.Ct. at 1621, fn. 13.