Eugene John MESEROLE, Jr.,
Plaintiff-Appellant,

v.

M/V FINA BELGIQUE, et al.,
Defendants-Appellees.

No. 83–3610
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

June 6, 1984.

Lewis & Caplan, Pete Lewis, New Orleans, La., for plaintiff-appellant.

Chaffe, McCall, Phillips, Toler & Sarpy, Robert H. Murphy, Philip F. Cossich, Jr., Kenneth J. Servay, New Orleans, La., for defendants-appellees.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

Longshoreman Eugene John Meserole was injured while doing repair work aboard the M/V Fina Belgique, a vessel owned by Petrofina, S.A. His action against Petrofina ended in summary judgment for the owner. We affirm.

## I

The Fina Belgique suffered serious damage in a collision on the Mississippi River. Surveyors from Dixie Machine Welding & Metal Works, Inc. (Dixie), boarded the ship on July 12, 1980, and spent three days inspecting the damage. While the Fina Belgique lay anchored in the middle of the river, Dixie's night crew began work at about 4:00 p.m. on July 15, 1980. The day crew, on which Meserole served as welder, boarded early the next morning. Meserole's foreman, Harold Huffman, soon discovered that both the night and day crews had forgotten to bring aboard certain equipment necessary for welding, so he assigned Meserole and a helper to do some pipe fitting work in an area off the vessel's main engine room. He showed Meserole what was to be done and left. Meserole and the other Dixie worker began trying to work loose a pipe fitting. Standing on a pipe some 15 feet above the deck, Meserole followed Huffman's instructions by heating the fitting with an acetylene torch for approximately ten minutes. Then, using a large wrench and with all his might, Meserole tried to break the fitting loose. He had only worked with the wrench a few seconds when he slipped off the pipe and fell to the deck below, seriously injuring himself.

Meserole now claims that he slipped because his work shoes had picked up a film of oil from the deck of the Fina Belgique. Thus, he argues that Petrofina negligently turned the vessel over to Dixie with oily decks and in an unsafe condition. He also argues that a representative of the vessel actively directed members of the Dixie repair crew, yet failed to intervene when the ship's oily decks were not cleaned before work began. The district court granted Petrofina's motion for summary judgment without written order.

## II

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We uphold this summary judgment, for the record contains no evidence indicating breach of any duty owed by Petrofina as owner of the vessel.

*Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), outlined the duties owed by a shipowner to a stevedore and its longshoremen. We recently recited those duties in *Stass v. American Commercial Lines, Inc.*, 720 F.2d 879, 882 (5th Cir. 1983), and we need not repeat them here. *Stass* also followed other recent Fifth Circuit authority in holding that the owner's initial duty to exercise ordinary care in turning over a safe ship is "subtly altered" in the context of repair operations: "the vessel owner has no duty to deliver his ship to the shipyard in a hazard-free condition, when the requested repairs would remedy the hazards which caused the injury." *Id.* See, *e.g., Duplantis v. Zigler Shipyards*, 692 F.2d 372, 374–75 (5th Cir.1983); *Hill v. Texaco, Inc.*, 674 F.2d 447, 452 (5th Cir. 1983). *See also West v. United States*, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959). These repair cases recognize that the ves-

sel owner cannot protect the stevedore or its longshoremen from dangers "inherent in the carrying out of the contract." *Hill,* 674 F.2d at 452 (quoting *West,* 361 U.S. at 123, 80 S.Ct. at 193). The injury in *Stass* was caused by slippery sprouted grain that had not been cleaned from the damp work area aboard a barge. We upheld the trial court's determination that cleaning work areas was "a necessary first step in doing the work," 720 F.2d at 884 (quoting *Duplantis,* 692 F.2d at 375), and that the risk presented by the sprouts was one "inherent in carrying out the contract for repairs." 720 F.2d at 884 (quoting *West,* 361 U.S. at 123, 80 S.Ct. at 193).

The only evidence on the subject in this record indicates that Dixie bore the responsibility to clean work areas and to provide what scaffolding was necessary to accomplish the repairs. Dixie's invoice covering the repair job provided that the stevedore would "[f]urnish necessary equipment and material to perform repairs," "[r]ig material and equipment onto vessel and into [its] engine room," and "[i]nstall temporary lighting and necessary stagings...." Charles G. Barthel, III, Dixie's ship superintendent in charge of the Fina Belgique repairs, testified by deposition that Dixie was responsible for cleaning areas where work was to be performed. In the face of this showing by Petrofina, Meserole offers nothing of record to suggest that cleaning the work areas was not an obligation imposed on Dixie as a necessary first step in performing the repairs. He cites a letter from his expert, who states that the work specifications did not mention the oil on the decks, and opines that the shipowner should have corrected the condition before the repairs began. The unsworn letter is inadmissible on summary judgment, Fed.R.Civ.P. 56(e); *see Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980) (per curiam); 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2738 (1983), and offers no more than an erroneous legal conclusion. He also argues that the repair was rushed by the shipowner's representative and that the time-consuming process of bringing neces-

sary ladders or scaffolding into the engine room was therefore sidestepped. But the record reveals that Dixie, not Petrofina, bore the duty to provide staging in the work areas. In short, the plaintiff has offered nothing of record to rebut Petrofina's showing that Dixie was to perform such cleaning and provide such staging as was necessary to accomplish the repair. In these circumstances, Petrofina was entitled to rely on Dixie to perform its repair work properly, including the "necessary first steps" of cleaning the damaged engine room and providing scaffolding. *Stass,* 720 F.2d at 884.

Meserole insists, however, that Petrofina was duty-bound to clean the oily film from the decks before turning the vessel over to the stevedore. He cites both a Ninth Circuit case and a passage from the legislative history behind the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, Pub.L. No. 92–576, 86 Stat. 1251 (1972), amending 33 U.S.C. §§ 901–950. *Subingsubing v. Reardon Smith Line, Ltd.,* 682 F.2d 779 (9th Cir. 1982); S.Rep. No. 115, 92d Cong., 2d Sess. 2 (1972). *See* H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Ad.News 4698, 4704. The longshoreman in *Subingsubing* was injured when he tripped on a small piece of wood left on deck by the vessel's crew before the longshoremen came aboard. We cannot know from *Subingsubing* what task brought the longshoremen aboard the Victoria City, but we can assume that their chores did not include removing the tripping hazard left on deck by the crew. Here, the stevedore's task did encompass the cleaning and preparation of work places and the use of safe staging. For this same reason, the slip-and-fall example used in the Committee Report is inapposite.

Even if cleaning the deck's oily slick and providing staging were somehow not necessary first steps under *Stass, Hill,* and *Duplantis,* Petrofina owed no duty to warn Dixie of the oily film on the decks of the Fina Belgique. The vessel had just days before been involved in a serious collision in which it suffered damage to its stern starboard quarter, primarily in the engine

room. Dixie was on board for three days surveying the damage. As Huffman explained, stevedores find a "film of oil" in the engine rooms of almost all diesel vessels. As slippery grain residue was to be expected in *Stass*, so some oily film was to be expected by the stevedore in this case. *See Scindia*, 451 U.S. at 166–67, 101 S.Ct. at 1622.

Finally, Meserole claims that representatives of Petrofina directed the repair work, were aware of the vessel's oily decks, and should have intervened to correct the condition when it became obvious that Dixie was not going to do so. The only evidence of any involvement of the vessel owner or its representative in the repair operations is testimony from Meserole that, before the accident, he carried some pipe at the direction of "the Captain." Barthel also testified that he received information from "the representative" and "pass[ed] it on to Dixie personnel." But the record contains nothing indicating that the vessel's crew was involved in or had "actual knowledge" of the hazard that caused Meserole's injury—the lack of adequate scaffolding combined with slippery footing. *See Stass*, 720 F.2d at 885; *Duplantis*, 692 F.2d at 376; *Hill*, 674 F.2d at 451.

We therefore uphold the district court's summary judgment for Petrofina.

AFFIRMED.