BEATTY, Justice.
Plaintiff, Hershel Wade, appeals from a summary judgment for defendants Cove Shipping Company, Inc., and Metal Marine Associates, in his action brought under Section 5(b) of the Longshoreman’s and Har-borworker’s Compensation Act as amended in 1973, 33 U.S.C. § 905(b). We affirm.
Cove Shipping Company was the operator of an oceangoing tanker, Cove Trader, which, at the time of the alleged accident, had been undergoing overhaul and extensive repairs by a number of shore-based contractors at Bender Shipbuilding and Repair Company in Mobile. Bagwell Coating was one of the contractors, and it was employed to sandblast and paint the inside of the 33 cargo tanks contained in the ship.
Entry into and exit from each tank was made from the main deck through a circular manhole which had a coaming about 30 inches high and 40 inches in diameter. Each coaming had a hinged cover, commonly known as a manhole cover. The tank *1306 also contained a ladder extending from the deck level to the bottom of the tank.
When the accident occurred, plaintiff Wade had been working aboard the Cove Trader for about five months in his capacity as day shift superintendent for Bagwell Coating. After signing all the other Bag-well Coating workers out, plaintiff proceeded to the ship’s number 10 starboard tank, and, equipped with a flashlight, descended into that tank to inspect the coating. While in the tank making that inspection, according to plaintiff, someone placed the manhole cover of that tank onto the coam-ing. The cover had previously been removed from its hinges to facilitate the work, and plaintiff chose to slide the cover to the side far enough to allow him to exit the tank. Having moved the cover to the side, plaintiff proceeded from the top of the ladder to the deck, and, while doing this, he fell to the deck, injuring his neck and right shoulder.
Wade brought this action in one count, alleging negligence on the part of the defendants under general maritime law.[1] Cove Shipping Company and Metal Marine Associates moved to dismiss and, following the denial of their motions, filed their answers and proceeded with discovery. In due course, they moved for summary judgment based upon the pleadings, plaintiff’s depositions, and briefs. After hearing arguments on the motions, the trial court granted summary judgment for both of these defendants. Whether that action was proper is the question presented on appeal.
Section 905(b), supra, recites in pertinent part:
“In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.”
The language of the present section limits a longshoreman's or harborworker’s recovery against a vessel to a recovery for the vessel’s negligence only.
The standards to be applied against the vessel owner in such a negligence action were described in Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). In that case, a longshoreman sued the vessel owner to recover damages on account of injuries resulting from a malfunction of a braking mechanism on a ship’s winch that was being used to load cargo. Interpreting the section’s language, the United States Supreme Court set forth the vessel’s legal duty, 451 U.S. at 168-72, 101 S.Ct. at 1622-24:
“Congress intended to make the vessel answerable for its own negligence and to terminate its automatic, faultless responsibility for conditions caused by the negligence or other defaults of the stevedore. Cases holding the vessel liable on the ground that it owed nondelegable duties to protect the longshoremen from injury were rejected. It would be inconsistent with the Act to hold, nevertheless, that the shipowner has a continuing duty to take reasonable steps to discover and correct dangerous conditions that develop during the loading or unloading process. Such an approach would repeatedly result in holding the shipowner solely liable for conditions that are attributable to the stevedore, rather than the ship. True, the liability would be cast in terms of negligence rather than unseaworthiness, but the result would be much the same. ‘[Cjreation of a shipowner’s duty to oversee the stevedore’s activity and insure the safety of longshoremen would ... saddle the shipowner with precisely the sort of nondelegable duty that Congress sought to eliminate by amending section 905(b).’ [Citations omitted.]
*1307 “As a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards. Section 41 of the Act, 33 U.S.C. § 941, requires the stevedore, the longshoreman’s employer, to provide a ‘reasonably safe’ place to work and to take such safeguards with respect to equipment and working conditions as the Secretary of Labor may determine to be necessary to avoid injury to longshoremen. The ship is not the common employer of the longshoremen and owes no such statutory duty to them. Furthermore, as our cases indicate, the stevedore normally warrants to discharge his duties in a workman-like manner; and although the 1972 Amendments relieved the stevedore of his duty to indemnify the shipowner for damages paid to longshoremen for injuries caused by the stevedore’s breach of warranty, they did not otherwise disturb the contractual undertaking of the stevedore nor the rightful expectation of the vessel that the stevedore would perform his task properly without supervision by the ship.
“We are of the view that absent contract provision, positive law, or custom to the contrary — none of which has been cited to us in this case — the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable to the longshoremen [or harborworkers] for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself. This conclusion is plainly consistent with the congressional intent to foreclose the faultless liability of the shipowner based on a theory of unseaworthiness or nondelegable duty. The shipowner, within limits, is entitled to rely on the stevedore, and owes no duty to the longshoremen to inspect or supervise the cargo operations. ...” (Footnotes omitted.)
The gist of the plaintiff’s allegation of negligence against the shipowner here is that someone, possibly one of the vessel’s employees, placed the manhole cover upon the coaming while plaintiff was inside the tank, and that this conduct was negligent. Thus, the claimed negligence was neither the failure of the shipowner to deliver a safe ship, nor the failure to warn plaintiff of a danger, i.e., a hidden defect, known to the shipowner after the ship has been delivered by it to the shore-based contractor. Nor was there either alleged or proved any open and obvious danger, a requirement explained in Helaire v. Mobil Oil Co., 709 F.2d 1031, 1036 (5th Cir.1983):
“Once loading [or repair] operations have begun, the vessel owner can be held liable for injuries to employees of the stevedore resulting from open and obvious dangers only in the event of actual knowledge of the danger and actual knowledge that he cannot rely on the stevedore to remedy the situation.”
See also Wild v. Lykes Brothers Steamship Corp., 734 F.2d 1124 (5th Cir.1984).
Moreover, in Mayer v. Lykes Brothers Steamship Corp., 585 F.Supp. 1222 (E.D.La.1984), in which a refrigeration mechanic employed by a shore-based contractor had sued the shipowner under § 905(b) for damages, the trial court, citing Hill v. Texaco, Inc., 674 F.2d 447 (5th Cir.1982), at 450, recognized that “the mere presence of the vessel’s crew on the ship does not prove knowledge of [a] hazardous condition.”
Here, then, there was an absence of proof that the vessel was involved in any of the repair operations being conducted in the area of the tanks; indeed, it was shown that the work in which plaintiff was engaged had been contracted to plaintiff’s employer, Bagwell Coating. Under the standards of Scindia Steam Navigation Co., and cases cited following that decision, we hold that no duty was owed by defendant Cove Shipping Company to the plaintiff.
Additionally, we find that summary judgment was also proper in favor of co-defendant Metal Marine Associates. It is undisputed that Cove Shipping Company, not Metal Marine Associates, was the owner of the Cove Trader. Metal Marine Associates *1308 was the general contractor that handled the work being done on the Cove Trader. Apparently, plaintiff construed that relationship as one converting Metal Marine Associates into an owner pro hac vice. The distinction was explained in Bossard v. Port Allen Marine Service, Inc., 624 F.2d 671, at 672-73 (5th Cir.1980), quoted later in Ducote v. International Operating Co., 678 F.2d 543, 545 (5th Cir.1982). Bossard states:
“For [pro hac vice ] ownership to be found, it is generally necessary for the defendant’s relationship to be that of shipowner-bareboat charterer. Such a relationship is materially different from that of shipowner-ship repairer or shipowner-stevedore. Rao v. Hillman Barge and Construction Co., 467 F.2d 1276, 1277 (3rd Cir.1972). ‘[T]he charterer takes over the ship, lock, stock and barrel, and mans her with his own people. He becomes ... the owner pro hac vice, just as does the lessee of a house and lot, to whom the demise charterer is analogous.' G. Gilmore & C. Black, the Law of Admiralty, § 4-1 at 194 (2nd ed. 1975); see Eskine v. United Barge Co., 484 F.2d 1194, 1196 (5th Cir.1973). Though the ship repairer is a bailee, and to that extent is like a charterer, he plainly does not have the degree of control over the vessel that the charterer, the owner pro hac vice, has.”
Tort liability under § 905(b) is limited to vessels. Scindia Steam Navigation Co., supra; West v. Kerr-McGee Corp., 765 F.2d 526 (5th Cir.1985). Because Metal Marine Associates is not the shipowners, summary judgment was proper in its favor.
This Court has concluded, under the authorities, that no duty was owed by either Metal Marine Associates or Cove Shipping Company to plaintiff. We must observe, in addition, that no facts were adduced furnishing a reasonable inference that either of these defendants committed a negligent act causing plaintiffs injury.
If, arguendo, the mere placing of a manhole cover on the manhole was an act of negligence, cf. McDonough Marine Service, Inc. v. M/V Royal Street, 465 F.Supp. 928 (E.D.La.1979), affirmed, 608 F.2d 203 (5th Cir.1979), still plaintiff is under a burden to prove the identity of the person responsible for that act. As stated by W. Prosser, Handbook of the Law of Torts (4th ed. 1971), at 218:
“It is never enough for the plaintiff to prove merely that he has been injured by the negligence of someone unidentified. Even though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant. On this too the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where it is clear that it is at least equally probable that the negligence was that of another, the court must direct the jury that the plaintiff has not proved his case. The injury must either be traced to a specific instrumentality or cause for which the defendant was responsible, or it must be shown that he was responsible for all reasonably probable causes to which the accident could be attributed.”
Plaintiff’s only pertinent testimony on the identity of the tort-feasor was this:
“I was in the tank, the cover was put on and covered up. I couldn’t see who did it or how many did it or what.... I can say, in my opinion, it had to be either Bender [Shipbuilding and Repair Company], Metal Marine [Associates], or Cove Shipping [Company], because those were the only people onboard the ship.”
In other words, plaintiff did not know who placed the cover; he just guessed that someone in the employ of Cove Shipping Company, Metal Marine Associates, or Bender Shipbuilding and Repair Company did it. This conjecture, we respectfully observe, does not substitute for a fact establishing the identity of the tort-feasor. See Sprayberry v. First National Bank, 465 So.2d 1111 (Ala.1984).
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.

. In addition to Cove Shipping Company and Metal Marine Associates, plaintiff also sued Bender Shipbuilding and Repair Company. Summary judgment was subsequently entered in favor of that co-defendant. The propriety of that judgment is not an issue on this appeal.