United States Court of Appeals,

Fifth Circuit.

No. 91-3526.

In re RIVER TRANSPORTATION ASSOCIATES, etc., et al. and Marine Equipment Management, etc., et al., Appellees,

v.

Susan WALL, individually and as administratrix, of the estate of Harold Wall, Mary Joan Wall, Conticarriers and Terminals, Inc., and Dorothy Martin Stewart, tutrix for Sandra Lynn Wall and Crystal Ann Wall, Wanda Cheramie, etc., et al., Appellants.

In re CONTICARRIERS AND TERMINALS, INC., and Susan Wall, individually and as Administratrix of the estate of Harold Wall and Mary Joan Wall and Dorothy Martin Stewart, tutrix for Sandra Lynn Wall and Crystal Ann Wall, Wanda Cheramie, etc., et al., Appellants,

v.

RIVER TRANSPORTATION ASSOCIATES and Marine Equipment Management Corporation, Appellees.

In re PROGRESSIVE BARGE LINE, INC., as owner of the M/V GAZOO in a cause of exoneration from or limitation of liability, Appellant,

v.

RIVER TRANSPORTATION ASSOCIATES and Marine Equipment Management Corporation, Appellees,

v.

Susan WALL, individually and as administratrix of the estate of Harold Wall and Mary Joan Wall, Dorothy Martin Stewart, Tutrix for Sandra Lynn Wall and Crystal Ann Wall and Conticarriers and Terminals, Inc., Wanda Cheramie, etc., et al., Appellants.

Oct. 21, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WISDOM, REYNALDO G. GARZA, and JONES, Circuit Judges.

WISDOM, Circuit Judge.

I.

Harold Wall, captain of the M/V Gazoo, disappeared at about 10:15 on the night of September 12, 1989, making his way to shore across barges moored together in the Mississippi River at New Orleans. The M/V Gazoo, owned and operated by Progressive Barge Lines, Inc.

("Progressive"), was tied up outside a fleet of barges being repaired by the ContiCarriers Fleet ("ContiCarriers"), a repair facility. One of the barges, the RTA-9, was owned by River Transportation Associates ("RTA") and operated by the Marine Equipment Management Corporation ("MEMCO") under a bare boat charter. The RTA-9 had on its deck and sides a residue of fertilizer from its previous cargo, making it very slippery to traverse, even for the crewmen wearing the required oil resistant, steel-toed deck shoes. There was a gap of about 18 inches between that barge and the Barge CCT-401, owned by ContiCarriers. No one saw Captain Wall fall. Two days later, his body was found floating in the river. The cause of his death was asphyxiation by drowning.

It is common knowledge that harbor workers and others customarily cross from one barge to another to reach the dock where barges are moored. The custody of the RTA-9 was relinquished to ContiCarriers to make limited repairs.[1] We do not know if the spilled fertilizer actually caused Captain Wall's fall, but the district court concluded that "the weight of evidence and opinion in this case.... is that Captain Wall slipped when stepping across Barge CCT-401 onto Barge RTA-9 ...". The court's opinion granting the RTA-MEMCO's motion to dismiss appears to have been based on the premise that RTA and MEMCO were relieved of any liability for an existing hazard when they turned over the custody of the Barge RTA-9 to ContiCarriers—even to make limited repairs irrelevant to the accident.

The M/V Gazoo was moored on the outboard side of Barge CCT-401, which was moored outboard of Barge RTA-9. The RTA-9 was outboard of a ContiCarriers' work barge.[2] There was a gap of approximately 18 inches between the CCT-401 and the RTA-9. At the time Captain Wall was last seen he was walking from the port bow (outboard side) of the CCT-401 to about the midline on the bow. Captain Wall was wearing cowboy boots, not the required oil-resistant, steel-toed deck shoes, and he was not wearing a work vest nor carrying a flashlight.

It is uncontested that MEMCO routinely inspected barges at ContiCarriers during the course

---

[1]The RTA-9 had sustained minor damage to its starboard stern knuckle when it was struck by another fleet boat.

[2]The general configuration of the barges and M/V Gazoo at the time of the accident is as shown below:

of repairs using surveyors or other agents. It is uncontested that none of the parties gave instructions to ContiCarriers to clean the RTA barge although ContiCarriers routinely offered such services. The principal issue before this Court is whether the RTA and MEMCO, the owner and the operator of Barge RTA-9, can disclaim liability for a hazardous condition upon transferring custody of the vessel to a repair facility for repairs unrelated to the hazard.

## II

RTA and MEMCO filed a complaint seeking exoneration from or limitation of liability. 46 U.S.C. § 182, *et seq.* ContiCarriers and Progressive each filed a separate complaint seeking exoneration from or limitation of liability. The district court consolidated these actions. The survivors of Captain Wall filed answers and claims in the three limitation actions.[3] Some of the parties filed various state court suits which the district court stayed by orders issued in the limitation proceedings.

RTA and MEMCO filed a motion for summary judgment seeking exoneration from all claims asserted against them arising out of Captain Wall's death. ContiCarriers and Progressive also filed motions for summary judgment. On February 4, 1991, the district court issued a minute entry ruling on the motions for summary judgment, exonerating RTA and MEMCO from all liability, but denying the motions of ContiCarriers and Progressive. RTA and MEMCO then filed a motion for entry of judgment under Fed.R.Civ.P. 54(b), allowing a judgment upon multiple claims or involving multiple parties. The court denied this motion and a motion for reconsideration. Later, however, the district court directed that a Rule 54(b) judgment be entered in favor of RTA and MEMCO dismissing the claims against them. This appeal followed.

## III

A. With respect to the motion for a summary judgment filed by Progressive, Captain Wall's Jones Act employer, the district court found that there was "not a complete absence of proof of the essential elements of the claimants' causes of action herein and Progressive's assertions that this

---

[3]The decedent's widow, his mother, two acknowledged illegitimate children (both minors), and three children of an earlier marriage, filed answers and claims in the limitation actions. The widow was appointed administratrix of the decedent's succession.

matter is ripe for summary judgment are erroneous".[4]  We agree.

B. The district court also dismissed the motion of ContiCarriers for summary judgment because there were material questions of fact in dispute.  As the court stated, "a finder of fact can draw reasonable inferences from the witnesses' testimony and physical evidence at the scene to draw a reasonable legal inference as to how, where, and why this accident took place on the night of September 12, 1989."[5]  We agree.

C. The district court granted summary judgment of dismissal in favor of RTA and MEMCO. We have difficulty with this portion of the court's decision.

The district court explained this portion of its decision as follows:

As regards the motion for summary judgment of RTA and Memco, a *barge owner and/or operator who turns his barge over to a repair facility is not liable for injuries allegedly caused by cargo on the decks of the barge.  See,* e.g., *Stass v. American Commercial Lines, Inc.,* 720 F.2d 879 (5th Cir.1983);  *Meserole v. M/V FINA BELGIQUE,* 736 F.2d 147 (5th Cir.1984).  [Emphasis added]  It is the repair facility itself that is obliged and responsible for erecting safeguards and remedying unsafe conditions on a barge delivered for such services.  *See* 29 C.F.R. §§ 1915.73, 1915.91, 1915.92.  In addition, as Captain Wall was a Jones Act seaman within the scope of his employment at the time of this casualty, he possesses the full range o f seaman's remedies against his own employer and cannot maintain a *Sieracki*-type unseaworthiness action against a vessel on which he was not a crew member.  *See Smith v. Harbor Towing & Fleeting, Inc.,* 910 F.2d 312, *reh. and reh. en banc denied,* 917 F.2d 559 (5th Cir.1990);  *Bridges v. Penrod Drilling Co.,* 740 F.2d 361 (5th Cir.1984).  Summary judgment in favor of RTA and Memco is appropriate under the facts of this case.  ContiCarriers clearly had primary control and custody of Barge RTA-9 for several days prior to this accident.[6]

The trial court granted summary judgment in favor of RTA and MEMCO based on two LHWCA cases:  *Stass* and *Meserole.*  Because the Walls have no unseaworthiness claim against RTA and MEMCO (Wall was not a member of the crew of the RTA-9 and not a longshoreman) they brought their claims not under the Jones Act or the LHWCA but under general maritime law, which imposes a general burden of reasonable care on a vessel owner toward those who come aboard the

---

[4]A Jones Act employer is liable for even the slightest possible negligence.  Moreover, the plaintiff's burdens of proving causation is "featherweight".  See authorities cited in the memorandum decision of the district court.

[5]As the district court stated in its memorandum decision "ContiCarriers had a statutory duty to erect safeguards and remedy unsafe conditions if allowing anyone to enter upon Barge RTA-9."

[6]Minute Entry at 6-7.

vessel. This standard is similar to that imposed by LHWCA, which may be why the district court applied *Stass* and *Meserole*. These cases are superficially analogous but the rule they express does not cover this case. The difficulty with the district court's decision is that it produces a new rule that would have to be stated in these unacceptable terms: Under federal maritime law a vessel owner may remain legally liable for certain dangerous conditions on the vessel even two years after it has relinquished control over that vessel to a third party; but a vessel owner is not liable in any circumstances for dangerous conditions it may have created or tolerated that may have caused an injury five days after it relinquished control of the vessel to a fleet operator for repairs, even though the dangerous condition is outside the area to be repaired. Such a rule is incompatible with such established precedents as *Kermarec*[7] and *Verdin*[8] and disregards the inapplicability (on many counts) of *Stass*[9] and *Meserole*.[10]

In *Kermarec,* erasing the distinction between licensees and invitees, the Supreme Court held that "the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case".[11] In footnote 10 supporting this sentence the Court cited five cases decided by courts of appeals involving "a seaman crossing another vessel to reach the pier".[12]

*Stass* and *Meserole* were cases in which repair workers were injured on vessels that were being repaired. (Wall was not a repair worker). Their injuries were either caused by the condition that was to be repaired or occurred in the vicinity of the repairs. These cases hold that a vessel owner does not bear the duty of keeping his ship hazard-free "when the requested repairs would remedy the

---

[7]*Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

[8]*Verdin v. C & B Boat Co., Inc.,* 860 F.2d 150, *reh. denied,* 862 F.2d 874 (5th Cir.1988).

[9]*Stass v. American Commercial Lines, Inc.,* 720 F.2d 879 (5th Cir.1983), *reh. denied,* 724 F.2d 976 (5th Cir.1984).

[10]*Meserole v. M/V FINA BELGIQUE,* 736 F.2d 147 (5th Cir.1984).

[11]358 U.S. at 632, 79 S.Ct. at 411.

[12]*Id.*

hazards which cause the injury".[13]  In *Stass* the Court found that "cleaning the areas to be repaired ... was ... a necessary first step in the work" and that the slippery footing caused by the cargo was a risk" inherent in carrying out the contract for repairs".[14]  In other words, one cannot be found to have acted unreasonably in not preventing a worker's exposure to a condition that he was hired to repair. This holding and the logic supporting it do not reach cases involving dangerous conditions outside the areas of repair.  The fertilizer that Captain Wall may have slipped on was not located near the damage to the vessel that ContiCarriers was in the process of repairing.

*Stass* and *Meserole* also contained findings that the repair contractor was either contractually or customarily obligated to clean the vessel.  This case contains no such findings.  Further, ContiCarriers notes that RTA-MEMCO declined to accept the contractual offer to clean the RTA-9; RTA and MEMCO routinely used its own agents to inspect its barges undergoing repairs.  Thus, even if LHWCA jurisprudence did apply generally, *Stass* and *Meserole* did not mandate the summary judgment awarded below.  We would have to find that, as a matter of law, a repairer who has had control of a vessel for five days is in a better position to prevent accidents, such as the one in this case, than the vessel owner—so much a better position that the vessel owner is entirely absolved of its duties to keep its vessel free of hazards to life and limb.  This rule would represent a real change in the law.

We cannot rely on LHWCA cases (*Stass* and *Meserole,* e.g.) to hold that the repairer's duty under the OSHA regulations erases the vessel owner's duty under *Kermarec.*  There is a contractual element to a LHWCA case that is not applicable here.  The Court tried to strike a balance between the vessel owner's duty of reasonable care over his vessel and the stevedore's duty of workmanlike performance on the vessel.  This case is not about the conflict between the vessel owner and the fleeter, or about balancing their duties against each other.  The district court did not hold that RTA-MEMCO could not be liable because ContiCarriers *would* be liable.  The court held only that RTA-MEMCO could not be liable to Captain Wall because it owed him no duty at all.  *Stass* and *Meserole*

---

[13]*Stass,* 720 F.2d at 882.

[14]*Id.* at 884.

do not offer sufficient support for this holding.

As noted, the rule flowing from the district court decision conflicts with another Fifth Circuit opinion, *Verdin v. C & B Boat Co., Inc.*[15] In *Verdin,* this Court held that a vessel owner's duty to exercise reasonable care is not eliminated when it relinquishes custody of its vessel to a third-party contractor. The Court held that a barge owner *could* be liable for negligence in failing to repair a dangerous condition that caused the death of a tugboat captain. *Verdin* may be distinguished in that it involved a condition that had been left unrepaired for over two years; in contrast, in this case, although it concerned a common problem—cargo residue remaining on a barge deck—the hazard had existed for only a few days. *Verdin,* however, is the *only* relevant case that arose under general maritime law and not under the LHWCA. It requires us to acknowledge that the liability of a vessel owner may survive the lengthy control over its vessel by a third party.

In *Subingsubing v. Reardon Smith Line, Ltd.,*[16] the Court of Appeals for the Ninth Circuit held that a vessel owner owes a duty of "reasonable care to keep the deck clear of dangerous and non-obvious tripping hazards at the time that the longshoreworker comes on board".[17] (Like *Stass* and *Meserole, Subingsubing* arose under the LHWCA and not under general maritime law.) The Court reversed a summary judgment holding that the vessel owner owed a duty to the stevedore to inspect for or remove a small piece of wood on the deck within the confines of cargo operations assigned to the stevedore.

In the instant case RTA-9 had a dangerously unsafe hazard on a walkway known to be used by Captain Wall and others.

IV

We have considered all of the arguments of the parties, including those not discussed in this opinion. We affirm the judgment of the district court, except with respect to its summary judgment in favor of RTA and MEMCO. We reverse that judgment and remand the case for proceedings

---

[15]860 F.2d at 155-56.

[16]682 F.2d 779 (9th Cir.1982).

[17]*Id.* at 782.

consistent with this opinion.

EDITH H. JONES, Circuit Judge, dissenting:

Although my esteemed colleagues have persuasively stated their reasons for sending this case to the jury on the liability of MEMCO as the owner of barge RTA-9, I cannot agree that MEMCO had a duty to remove fertilizer from the deck of its barge under the facts before us. The barge owner was *not* responsible for its barge's being in the ContiCarriers fleet on the date of the accident, and under these circumstances, MEMCO had no duty to clean its deck of grain residue. I respectfully dissent.

Preliminarily, I agree that *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959), is generally applicable to govern MEMCO's liability; therefore, a barge owner is not relieved of its duty of care as a matter of law anytime it turns over a barge to a repair facility. I also agree that the *Stass* and *Meserole* cases, being founded on § 905(b) liability, are distinguishable. But, read fairly, the district court decision does not suggest that *Kermarec* is not applicable. Rather, the district court indicated the narrowness of its holding by stating that summary judgment was "appropriate under the facts of this case." Thus, instead of holding that barge owners may never be liable for injuries that occur while a barge is in the custody of the repair facility, the district court held only that under the particular circumstances of this case, the barge owner cannot be held liable for this accident. *Kermarec* likewise establishes a shipowner's duty to exercise reasonable care "under the circumstances" of a case.

When barge RTA-9 was originally placed in the Carrolton Fleet on August 8, 1989, to await offloading, it was loaded with fertilizer. ContiCarriers offered barge cleaning services at its facility for a fee. MEMCO did not request ContiCarriers to clean the RTA-9 while it was in the Fleet, however, because it normally made its own arrangements for cleaning, if needed, after offloading. When the RTA-9 was placed in the Fleet, MEMCO had no intention of returning the barge to the Fleet after offloading, and MEMCO apparently saw no reason to have the barge cleaned before it discharged its cargo.

While the RTA-9 was still in the Fleet, Progressive damaged the barge during handling such that repairs would be required once the barge was offloaded. It was for this reason alone that the RTA-9 was returned to the fleet on September 7, 1989, after its cargo had been discharged. Unlike the previous month, the RTA-9 was *not* placed in the fleet on MEMCO's account. The damages to the barge had been caused by ContiCarriers' agent, and ContiCarriers was undertaking for its own account to repair the RTA-9 and return it to MEMCO in seaworthy condition. Under these unusual circumstances, it is surprising to me that this court would impose on MEMCO a duty to clean the barge when the necessity to clean the barge, if any existed, was brought about entirely by the wrongful conduct of ContiCarriers or its agent which caused the damage.[1]

The majority rely on *Verdin v. C & B Boat Co.,* 860 F.2d 150 (5th Cir.1988), for the proposition that a barge owner may be held liable for a hazardous condition on a barge it has turned over to another company. I do not disagree with that general rule, although *Verdin* did not squarely address the point. *Verdin*'s facts are distinguishable, however, because the owner had failed for some time to remedy obvious hazards on its barge covers while knowing the barge was in use.

Even if MEMCO had a duty to remove fertilizer residue from the decks of the barge before it went back to ContiCarriers in September, I think the evidence of causal connection between the existence of the residue and Captain Wall's injury is probably too speculative to support a verdict for his relatives. This is not a Jones Act case as to MEMCO, and more than mere speculation over the cause of death should be necessary to justify a verdict for general maritime negligence. *See In re Cooper/T. Smith,* 929 F.2d 1073, 1077 (5th Cir.1991). I respectfully dissent.

CA (93) 5537, SIZE-19 PICAS,TYPE-PDI

---

[1]ContiCarriers was apparently unwilling to clean the barge at its own expense. The district court also relied on OSHA regulations requiring ContiCarriers to erect safeguards and remedy unsafe conditions on barge walkways and work areas, 29 C.F.R. §§ 1915.73, 1915.91, 1915.92 (1992). I think the regulations significantly recognized that ContiCarriers, not MEMCO, was best able to determine whether any barge placed in its fleet would be used as a crosswalk for visitors or workers and could expose them to obviously hazardous conditions such as slipperiness. Yet ContiCarriers' incentive to maintain a safe workplace may be diminished if liability for injury caused by an obvious crosswalk-type hazard, created by its decision to place the barges in a particular array, can be shunted onto an owner like MEMCO. It is unnecessary to rely solely on the OSHA regulations here, however, so I note their pertinence but would affirm the district court on the narrower basis stated in the text above.